**Donald C. HEIDELBERG, Appellant**

v.

**The STATE of Texas.**

No. 1418–03.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 15, 2004.

Brian W. Wice, Houston, for Appellant.

William J. Delmore, III, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, and Cochran, JJ., join.

Appellant was indicted for sexually assaulting his wife's eight-year-old granddaughter. Appellant and his wife were babysitting the victim when, according to the victim, Appellant came into her room while she was sleeping and fondled her and stuck his penis in her anus. Appellant denied the accusations and took the stand in his own defense. The jury convicted him and sentenced him to 25 years in prison. He now appeals, arguing that the Court of Appeals erred in holding that he failed to preserve the claims that the trial

court erred in: 1) permitting the prosecutor to cross examine him about his post-arrest silence, 2) permitting the prosecutor to elicit rebuttal testimony about his post-arrest silence through Detective James Fitzgerald, and 3) overruling Appellant's objections to the prosecutor's comments on his post-arrest silence during final argument in the guilt-innocence stage of trial.

The first ground for review claimed by Appellant pertains to the State's cross-examination at trial, when it began questioning Appellant about his willingness to speak to the investigator and whether he knew that the investigator was trying to contact him about the allegations. The following exchange occurred:

[STATE]: Mr. Heidelberg, you certainly knew that Detective Fitzgerald was trying to get a hold of you [to] talk to you, didn't you?

[DEFENSE COUNSEL]: Objection, Your Honor. This goes to the Fifth Amendment right, my client's Fifth Amendment. He doesn't have to talk to anybody.

[COURT]: Be overruled.

* * *

[STATE]: Did you ever ask to talk to the detective about this case once you knew that the charges were there?

[APPELLANT]: I didn't know about any charges until July of this year.

[STATE]: And in July of this year did you ask to talk to the detective in the case?

[APPELLANT]: Well, I was already incarcerated. So—

[STATE]: Well, did you ever ask anyone—

[DEFENSE COUNSEL]: Objection, Your Honor. This goes to the Fifth Amendment.

[COURT]: Overruled. Answer the question.

* * *

[STATE]: You certainly could have talked with the investigating officer on this case and explained to him, in your opinion, why [the complainant] made this up, right?

[DEFENSE COUNSEL]: Objection, your Honor. My client—all of this line of questioning goes to the Fifth Amendment. My client does not have to speak with anyone about it.

[COURT]: Be overruled.

Appellant's second ground for review refers to the State's rebuttal, when it offered the testimony of Detective Fitzgerald. The following exchange between the prosecutor and the detective occurred:

[STATE]: Were you able to make contact with the defendant?

[FITZGERALD]: In a way.

[DEFENSE COUNSEL]: Objection, Your Honor. I would like to renew my objection as to my client's Fifth Amendment right.

[COURT]: Be Overruled.

[DEFENSE COUNEL]: May I have a standing objection throughout so I'm not have to—

[COURT]: You may.

* * *

[STATE]: Once the defendant was placed under arrest, had he wanted to talk to you, would you have sat down and spoken with him?

[FITZGERALD]: Oh, definitely; yes, ma'am.

As to Appellant's third ground for review, the State made the following comment during rebuttal argument at the guilt/innocence stage:

[STATE]: Do you really believe he wanted to wait five months from the

date of arrest, he saved all that information to come and tell you? Of course not, that's garbage.

[DEFENSE COUNSEL]: Your Honor, I object again. And may I have a standing objection to any reference to the Fifth Amendment?

[COURT]: That will be overruled.

 On appeal, Appellant contends that the trial court erred in allowing the State to refer to Appellant's post-arrest silence in violation of Article I, section 10 of the Texas Constitution. The State, however, urges that Appellant did not preserve error because his objections at trial were based solely on the Fifth Amendment. The Fifth Amendment of the federal constitution protects post-arrest silence made only *after Miranda* warnings have been given. *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Article I, section 10 of the Texas Constitution, however, protects a defendant's post-arrest silence even before such warnings have been administered. *Sanchez v. State*, 707 S.W.2d 575, 582 (Tex.Crim.App.1986). Thus, in the present context, the trial judge properly overrules an objection based on "the Fifth Amendment." An objection referring specifically to the Texas Constitution or the *Sanchez* case, however, pointing out that this Court has barred the use of post-arrest, pre-*Miranda* statements to impeach a testifying defendant, would be an entirely different matter.

 Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part, that for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, *unless the specific grounds were apparent from the context*." TEX. R.APP. PRO. ANN. 33.1(a)(1)(A) (Vernon 2002) (emphasis added). Texas Rules of Evidence 103(a)(1) contains similar guidelines, providing that "a timely objection or motion to strike [must appear] on the record, stating the specific ground of objection, *if the specific ground was not apparent from the context*." TEX. R. EVID. ANN. 103(a)(1) (Vernon 2002) (emphasis added). Additionally, it is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial. *Euziere v. State*, 648 S.W.2d 700, 703–704 (Tex. Crim.App.1983).

In its holding, the Court of Appeals agreed that the trial court erred in allowing questions and comments pertaining to Appellant's post-arrest silence. *Heidelberg v. State*, 112 S.W.3d 658 (Tex.App.-Houston [1st Dist.] 2003). However, on rehearing, the court held that because Appellant's objections at trial were based solely on the Fifth Amendment, Appellant did not preserve error on the Texas constitutional claim. *Id.* at 661–662. The Court of Appeals relied on two cases, *Barnum v. State*, 7 S.W.3d 782 (Tex.App.-Amarillo 1999), and *Cantu v. State*, 994 S.W.2d 721 (Tex.App.-Austin 1999), pet. dism'd), improvidently granted, 19 S.W.3d 436 (Tex. Crim.App.2000), in its decision. In *Cantu*, the defendant was convicted of first-degree murder. *Id.* 994 S.W.2d at 725. At trial, the court allowed expert testimony over the defendant's objection. On appeal, the defendant argued that the trial court erred in admitting certain testimony at the punishment phase of trial, violating his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, as well as his rights under Article 1, sections 10 and 19 of the Texas Constitution. *Id.* at 732. In deciding that the defendant failed to preserve for review any state

constitutional claims, the court of appeals stated that "defense counsel never raised the issue of state constitutional requirements at trial." *Id.* The court additionally commented that the defendant had relied solely on a federal case regarding the Fifth and Sixth Amendments to the federal constitution when making his objection, and noted that a defendant's errors presented on review must be the same as the objections raised at trial. *Id.* at 733.

The defendant in *Cantu* had also claimed that his state statutory rights were violated under section 54.09 of the Texas Family Code, which sets out certain rights for juveniles. At trial, when the allegedly improper testimony was being solicited, the defendant had objected, saying: "And that also brings up the interesting issue as to whether the waiver is valid at the time because he's not been certified as an adult at that time. And he requires special Mirandizing and magistration before any questioning begins." *Id.* at 733. The court of appeals held that this objection was insufficient to preserve the state statutory claim for review because the statement was "too general" to have alerted the trial court that the defendant was averring to that section of the Family Code. *Id.* at 733. Additionally, the court of appeals stated that: "[There was] no indication from the record that the trial judge understood that the state statute was an authority for defense counsel's objection to the evidence. Moreover, the statement was made in the context of an argument that specifically identified federal law grounds for excluding [the doctor's] testimony." *Id.* at 733.

In *Barnum*, the defendant was convicted of murder. 7 S.W.3d at 786. At trial, the State admitted a written statement by the victim, to which the defendant objected

on the basis of hearsay and a violation of his Sixth Amendment right to confrontation. *Id.* at 789. On appeal, the defendant claimed that his federal Sixth Amendment and his State rights to confrontation under Article 1, section 10 of the Texas Constitution, were violated. *Id.* at 794. The court of appeals commented that the defendant had not preserved the state constitutional claim for review because his objection at trial "did not include a timely objection based on his asserted right under the Texas Constitution." *Id.* at 794.

While it is true that the court's discussions in *Cantu* and *Barnum* are dicta,[1] the cases give support to the notion that presenting a claim based *solely* on federal grounds will not suffice to put the court on notice to claims based on State grounds, unless the State ground is apparent from the context.

A number of cases deal with the sufficiency of imprecise objections, but because one must look to the context of each case in order to see if the ground of the objection was apparent, we must look at each situation individually as it arises. Still, those cases can be looked to for instructive guidance. In *Lankston v. State*, 827 S.W.2d 907 (Tex.Crim.App.1992), the defendant was convicted of aggravated sexual assault and indecency with a child. At trial, the following exchange occurred:

[STATE]: What did [the victim] tell you?

[WITNESS]: She told me that—

[DEFENSE COUNSEL]: Your Honor, may I make an objection? There are parameters that are exceptions to the hearsay rule that I believe this person can testify to under the rules, and [the State] has so filed [its] letter stating

---

1. The case turned on federal grounds, so the commentary on the state constitutional law issue was not necessary.

what those parameters are. I would just request that ... the questions be posed in a manner so that the nonobjectionable material she testifies to could be separate from that which would be hearsay under the rules.

[COURT]: I just want all the attorneys to stay within the parameters of 38.07[2]. I believe that's what you're referring to. I'll just say all attorneys will be expected to [sic] stay within those parameters and couch their questions in that state.

*Id.* at 909.

\* \* \*

[STATE]: Around June of 1987, what did [the victim] tell you happened to her?

*Id.* at 910. The witness proceeded to testify to an incident not within the State's written summary of her proposed testimony. Defense counsel objected, saying: "Your Honor, once again I'm going to have to object that this is hearsay." *Id.* The following exchange then occurred:

[STATE]: Judge, I can show you what we filed as our intent to use 38.07[2].

[COURT]: It's on file here. Let me read it here. All right. I'll overrule the objection.

*Id.* at 911. In forming its decision, the Court agreed that the defendant should have specified as to which part of the evidence he was objecting because some of the evidence was hearsay that had already been ruled admissible and some evidence was hearsay that was inadmissible. *Id.* at 910. Still, the Court found that the defendant had preserved error because "it [was] clear from context that both judge and prosecutor understood [Defendant's] objection to be a complaint about testimony not falling within the statutory hearsay exception for 'outcry' witnesses, because the ...

exchange occurred immediately afterwards." *Id.* at 910.

*Lankston* differs from the case at hand because, due to the prosecutor's specific questions, as well as the judge's comments when ruling, the record in *Lankston* clearly showed that all parties knew the nature of the objection. In contrast, many of the questions asked to Appellant in the case at hand were not time-specific, i.e. one could not tell from the State's questions whether the State was asking about pre-arrest silence, post-arrest pre-*Miranda* silence, or post-arrest post-*Miranda* silence. Furthermore, the objections by Appellant's attorney cited only the Fifth Amendment, not the Texas Constitution. Thus, the situation was not like *Lankston,* where the defendant's objection "could not reasonably have [been] understood ... to mean anything else." *Id.* at 911.

In another case, *Coleman v. State,* 644 S.W.2d 116 (Tex.App.-Austin 1982), the defendant was convicted of aggravated robbery. While taking the stand at trial, the Prosecutor asked the defendant: "Well, this story you are telling this jury here today, did you tell the Grand Jury this story. [sic] I mean did you come up and say, hey, I've been wrongfully arrested and harassed by [the police]. [sic] Did you tell the Grand Jury? Did you come up here and tell the Grand Jury that?" *Id.* at 117–118. The defense counsel objected, stating, "Your honor, I object to that question. I've been practicing law for seven years and I've never got [sic] to talk to a grand jury, and for him to imply that this man had an obligation to do so is totally ridiculous." *Id.* at 118. The trial judge overruled the objection. The court of appeals reversed the trial court, reasoning that even though the objection was not specific, it "clearly put the prosecutor and trial judge on notice that the prosecutor's line of questions invaded the constitutional

rights of the defendant to remain silent by not appearing before the grand jury." *Id.* at 119.

*Coleman* is distinguishable because the question by the prosecutor was clearly referring to a time period *post*-arrest—the prosecutor was specifically asking about the defendant speaking to the *Grand Jury*. In Appellant's case, however, the questions by the prosecutor did not clearly refer to any specific time-period. Questions such as "you knew that Detective Fitzgerald was trying to get a hold of you, didn't you?" do not necessarily refer to post-arrest silence. And, there is no indication in the record that the judge understood, by defense counsel's objection based on the Fifth Amendment and trailing a question which swept a broad time-period, that the defense was indeed claiming the protection of the Texas Constitution.

Appellant cites to *Samuel v. State,* 688 S.W.2d 492 (Tex.Crim.App.1985), to support his contention that the basis of his objection was apparent from the context. In *Samuel,* the defendant was found guilty of forgery. On direct examination by the State, the prosecutor asked the store clerk whether the defendant ever professed his innocence during a twenty-minute time period in which the store was holding him until the police arrived.[2] The defense attorney objected "to statements made after he was under arrest," and the court overruled the objection *Id.* at 494. Later, in jury argument, the prosecutor made the following comments:

"What is the defendant's statement when he's caught [by the store clerk]? 'It's only a check.' His words.... And [the store clerk] told you that for the twenty minutes he held this defendant until the police arrived that this defen-

dant did not utter one syllable protesting his innocence.... In fact, his silence there at the scene is one of the most damaging bits of evidence you have before you."

*Id.* at 494. The defense attorney again objected to the prosecutor's "comment on the defendant's right to remain silent and his comment on his failure to make a statement at the scene." *Id.* On appeal, the State claimed that the defendant's objection at trial preserved only federal constitutional grounds (under which there would be no protection for post-arrest, pre-*Miranda* silence), not state constitutional grounds. *Id.* at 494. This Court cited to *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977), quoting the Court's reasoning that "where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general and imprecise objection," and that even though the objection was somewhat of a "catchall," it was clear enough to put the court on notice as to the nature of the defendant's objection. 688 S.W.2d at 495.

*Samuel* is different from this case, however. Central to the Court's holding that the objection was sufficient to preserve a State law question for review appeared to be the fact that the defense attorney specified in his objections that the defendant was *"under arrest,"* and that the objections came "immediately on the heels of the prosecutor's question which attempted to elicit testimony as to [the defendant's] failure to protest his innocence." *Id.* at 495–96. Appellant's objections at trial did not rise to the level of those in *Samuel.* Indeed, Appellant's counsel made no mention of Appellant being under arrest, and the majority of his objections did not follow questions which specifically referred to

---

**2.** The defendant had been held at shotgun point by the store clerk, which the court of appeals deemed equivalent to being held un-

der arrest. The State did not contest that finding, and this Court did not rule on the issue. *Id.* at 495, n. 2.

post-arrest time periods. Furthermore, there is no indication in the record that the judge understood that Appellant was trying to invoke a protection different from the Fifth Amendment protection which he was citing.

Appellant cites to two more cases, *Cabrales v. State*, 932 S.W.2d 653 (Tex.App.-Houston [14th Dist.] 1996), and *Veteto v. State*, 8 S.W.3d 805 (Tex.App.-Waco 2000), in support of his contention that an objection based on the Fifth Amendment is sufficient to preserve error under the Texas Constitution. In *Veteto*, the police chief took the stand and the special prosecutor asked him: "Did [the defendant] deny any of these three aggravated assault charges?" *Id.* at 809. Defense counsel objected "because the failure to deny the offense is absolutely inadmissible." *Id.* The court sustained the objection. A few questions later, the special prosecutor again asked the police chief if the defendant made any statement to him. Defense counsel objected, stating, "Now, that is his Fifth Amendment right there," and the judge sustained the objection. *Id.* When the defense counsel asked for a mistrial, the court responded by saying, "Post arrest silence is—is not in any evidence. You can't consider it." *Id.* at 810. After redirect examination, the State again asked the police chief, "Did you give him an opportunity to talk to you?" *Id.* To which the defense counsel objected, "Your Honor, I am going to object to that. He was arrested. . . ." *Id.* The court allowed the question.

The *Veteto* court determined that the objection was sufficient to invoke the safeguards of the Texas Constitution because, in reviewing "the questions, the objections, the responses, and the trial court's interaction, it [was] clear that the objections were obvious to the trial court." *Id.* at 810. But such is not the case for Appellant. In *Veteto*, the trial judge *sustained* the objections made by defense counsel, indicating that the judge had an understanding of the basis on which the objections were made. But here, because the trial court overruled Appellant's objections without further comment, reviewing "the questions, the obligations, the responses, and the trial court's interaction" as the court did in *Veteto* gives no indication that any other basis for the objection other than that which was stated (based on the Fifth Amendment) was clearly apparent to the judge.

In *Cabrales*, the defendant was convicted of possession with intent to distribute. At trial, the following exchange occurred:

[PROSECUTOR]: Once the cocaine is found in those bags and [the deputy] tells the Defendant you [sic] are under arrest, does the Defendant then take the opportunity to tell them, whoa, wait a second. [sic]

[DEFENSE COUNSEL]: Excuse me, Your Honor. I will object strenuously to the attempt to get in a custodial statement of asylum [sic]. Counsel knows that's absolutely improper. *She just said she was under arrest.*

932 S.W.2d at 659 (emphasis added). The trial court overruled the objection. Then, in the very next statement, the prosecutor said: "You decide what's reasonable. Is it reasonable for an innocent person who's just been told there is a bunch of cocaine in the bags to not say at that point—," at which point the defense counsel objected, saying that it was "improper under the rules and the law. That's a comment on an issue that Counsel knows they can't go into. And it's also a misstatement of the evidence in this case." *Id.* Again, the trial court overruled the objection. The prosecutor again began to address the defendant's silence at the scene, and defense counsel objected, saying: "I will also ob-

ject again, as I have before, Your Honor, to the Prosecutor talking about things that are not in evidence, talking about *custodial* interrogation and *custodial* asylum [sic], all of which are objectionable." 932 S.W.2d at 659–60 (emphasis added). In holding that the objections by defense counsel were sufficient to preserve error under the Texas Constitution, the court reasoned that, based on the context of the entire record, the repeated objections were enough to alert the trial court that the defense was objecting to the improper questions about the defendant's post-arrest silence. *Id.* at 661.

*Cabrales* differs from Appellant's situation for many of the reasons *Veteto* differs. As in *Veteto,* the prosecutor's questions in *Cabrales* clearly pertained to a time period post-arrest. Additionally, defense counsel stated that the defendant was already under arrest and used language such as "custodial interrogation and custodial asylum," making it more obvious to the parties what the basis of the objections were. Furthermore, the record in Appellant's case gives no indication that the trial judge understood the basis of the objection to mean that the defense was actually invoking the protection of the Texas Constitution, rather than the Fifth Amendment, which was the sole basis upon which the defense relied. Thus, we cannot agree with Appellant that *Veteto* and *Cabrales* stand for the proposition that an objection *solely* under the Fifth Amendment, without more, preserves error to complain under the Texas Constitution.

An analogy can be made using the Fourth Amendment and article 38.23 of the Texas Code of Criminal Procedure. In one case dealing specifically with the Fourth Amendment and article 38.23, *Nelson v. State,* 607 S.W.2d 554 (Tex.Crim. App.1980), the defendant filed a motion to suppress in which he relied exclusively on

federal constitutional rights. In holding that only the federal claim was preserved for review, the Court reasoned that "neither the motion to suppress nor trial objection invoked the laws of this State; rather, [defendant] sought only that protection provided by federal constitutional law." *Id.* Appellant's case can be compared to *Nelson.* Appellant relied solely on federal grounds, citing only the Fifth Amendment in almost every objection.

We also commented on *Nelson* in *Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Crim. App.1988). In *Eisenhauer,* the defendant had filed a pre-trial motion to suppress, stating that the defendant "was arrested without a warrant and without probable cause in violation of the IV, V, and XIV Amendments to the Constitution of the United States and in violation of the laws and Constitution of the State of Texas." *Id.* at 161. At trial, however, the defense attorney objected solely on federal grounds. *Id.* Though the Court concluded that the objection was sufficient to preserve state constitutional claims for review, the Court was careful to distinguish *Nelson,* stating that "[t]his is not like the situation in *Nelson* . . . in which this Court held the State law grounds urged by the defendant for the first time on appeal had not been properly preserved for review since both the objection *and* the motion to suppress were based *solely* on federal grounds." *Id.* Clearly, the Court was distinguishing a scenario where a defendant invokes a state right in a motion to suppress but fails to address it orally at trial, from a situation where a defendant does not allude to the state constitutional right *at all,* as Appellant failed to do here.

Due to: 1) the lack of time-specific questions by the prosecutor, 2) counsel's failure to cite to the state constitution or even specify that he was objecting to post-arrest silence, 3) and the lack of commentary by

the judge in making his rulings on the objections, we hold that Appellant did not preserve error on any of the grounds he presents for review. We therefore affirm the Court of Appeals.

JOHNSON, J., filed a dissenting opinion, in which PRICE, and HOLCOMB, JJ., join.

JOHNSON, J., filed a dissenting opinion, in which PRICE, and HOLCOMB, JJ., join.

I respectfully dissent. The prosecution made repeated references to appellant's failure to protest his innocence. While some of those comments arguably referred to appellant's pre-arrest silence, the majority of them clearly pertained to time periods after appellant had been arrested.

[State]: And in July of this year did you ask to talk to the detective in the case?

[Appellant]:Well, *I was already incarcerated.* So—

[State]:Well, did you ever ask anyone—

\* \* \*

[State]: *Once the defendant was placed under arrest,* had he wanted to talk to you, would you have sat down and spoken with him?

[Fitzgerald]: Oh, definitely; yes, ma'am.

\* \* \*

[State]: Do you really believe that he wanted to wait five months *from the date of arrest,* he saved all that information to come and tell? Of course not, that's garbage.

Such comments violated appellant's right to silence, which is protected both by the Fifth Amendment to the United States Constitution and by Article I, § 10 of the Texas Constitution. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), *Samuel v. State,* 688 S.W.2d 492,

496 (Tex.Crim.App.1985). I believe that: 1) the state understood that its questions dealt with post-arrest silence; and 2) appellant's trial objections were sufficient to preserve error because the specific grounds of the objections were apparent from the context. Tex.R.App. Proc. art. 33.1(a)(1)(A). As in *Coleman v. State,* 644 S.W.2d 116 (Tex.App.-Austin 1982), counsel's objections clearly put the trial court and the prosecutor on notice that the prosecutor's line of questioning invaded the defendant's constitutional rights, federal and state, to remain silent.

In *Lankston v. State,* 827 S.W.2d 907 (Tex.Crim.App.1992), this Court warned against requiring litigants to "read some special script" in order to preserve a complaint for appeal:

As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston,* at 909. Here, defense counsel objected each time the prosecutor attempted to elicit commentary on appellant's failure to protest his innocence. Each time, the court overruled her objections. Eventually, he allowed her a standing objection, suggesting that he indeed understood the grounds for the objections, but simply chose not to sustain them.

In *Hicks v. State,* 493 S.W.2d 833 (Tex.Crim.App.1973), the Court addressed an imprecise objection to comment on post-arrest silence, and explained that:

the proper objection ... would be that at the time the question was asked, that the appellant was under arrest and that such a question is in violation of the

appellant's rights against self-incrimination and of the confession statute.

*Hicks,* at 837 (*internal citations omitted*). In this case, each time the prosecutor referred to appellant's failure, both before and after arrest, to volunteer information to authorities, defense counsel objected on the basis of the Fifth Amendment. She elaborated on these objections several times by stating that her client didn't have to talk to anybody.

This case is indistinguishable from *Samuel v. State,* 688 S.W.2d 492 (Tex.Crim. App.1985), in which this Court said:

> while appellant's objection did not rise to the model of precision set out in *Hicks,* we think that, coming as it did immediately on the heels of the prosecutor's question which attempted to elicit testimony as to appellant's failure to protest his innocence, it was sufficient to inform the judge of the import of his complaint.

*Samuel,* 688 S.W.2d 492 at 496, *citing Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Just as in *Samuel,* the specific grounds for appellant's objection, which came immediately on the heels of the prosecutor's questions about appellant's failure to protest his innocence, were apparent from the context. TEX.R.APP. PROC. art. 33.1(a)(1)(A).

The court of appeals' reliance on *Barnum* and *Cantu* for the general proposition that failure to specifically object on state grounds will result in a waiver of those grounds is misplaced. The applicable language in *Barnum* states simply that "Appellant's objection to the exhibit in the trial court did not include a timely objection based on his asserted right under the Texas Constitution." *Barnum v. State,* 7 S.W.3d 782, 794 (Tex.App.-Amarillo, 1999). There is no information in the opinion about what the *Barnum* trial objection *did* include. Therefore, there is no way of

determining whether the specific grounds for the objection were apparent from the context. In this case, the grounds for appellant's objection *were* apparent from the context.

In *Cantu,* the court of appeals first noted that the appellant had waived his state constitutional and statutory claims because his objection at trial was based solely on a federal case. *Cantu v. State,* 994 S.W.2d 721, 733 (Tex.App.Austin, 1999). The court then reversed on the basis of appellant's federal claims. *Id.* at 736. The language about waiver of state claims in *Cantu* is clearly dicta, and is inapplicable here.

Finally, the footnote in *Samuel,* which states that "such an objection made during trial under State law in a State court presumptively invokes State law rather than Federal, so that it is the latter that must be specified" is instructive in this case. State law cannot offer less protection than federal law, because "the federal constitutional safeguards applicable to the states represent the minimum standard for state courts, and the state courts are not limited to those standards in their construction of state's rights." *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App. 1991). However, an objection which invokes a right protected by both state and federal law, even if the state law provides more protection than the federal, should be sufficient to apprise the trial court of the basis for the objection.

Because it was clear from the context that defense counsel's objections referred to the state's attempts to elicit commentary on appellant's post-arrest silence, I believe the claim was preserved for appeal. Moreover, I think the trial court erred by failing to sustain those objections.

We should not rely *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) to support a holding that the federal constitution protects post-arrest silence

only after *Miranda* warnings have been given. *Doyle* was decided on the basis of due process, not the Fifth Amendment. Moreover, in *Doyle* it was presumed that *Miranda* warnings had been given, making it unnecessary to address the limits of pre-warning protections:

> The question in these consolidated cases is whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest. We conclude that use of the defendant's post-arrest silence in this manner violates due process, and therefore reverse the convictions of both petitioners.
>
> *Doyle v. Ohio,* 426 U.S. at 611, 96 S.Ct. 2240.

\* \* \*

[Appellants] were stopped within minutes by ... police acting on radioed instructions from the narcotics agents. One of those agents, Kenneth Beamer, arrived on the scene promptly, arrested petitioners, and gave them *Miranda* warnings.

*Id.* at 612, 96 S.Ct. 2240.

To say that post-arrest silence is not protected until the subject has been given *Miranda* warnings is to gut *Miranda* and elevate form over substance. The Fifth Amendment is not called into existence by being read by a police officer. It protects before, during, and after arrest and before, during, and after recitation of the *Miranda* warnings. The point of *Miranda* is that one must know what rights are available before one can claim those rights. *Miranda* is merely notice to a subject in custody that he may decline to speak to police. Reading *Miranda* warnings makes sure that all subjects know their rights and are given an opportunity to exercise

them. The right to remain silent may be the most important of those rights in the criminal context.

At the time of *Doyle, Miranda* was 14 years old and was described in *Doyle* as "a prophylactic means of safeguarding Fifth Amendment rights." *Doyle* 96 S.Ct. at 2244. *Miranda* is now 38 years old and has become ingrained in our legal and popular cultures. We now live in a world saturated by television shows that portray law enforcement. *Miranda* warnings are read to television suspects dozens of times each week. School children can recite them. Yet we now say that, if one is already aware of one's right to remain silent and chooses to act on that knowledge, one will be penalized for it; any pre-*Miranda* refusal or failure to talk to police is fair game at trial. This turns *Miranda* on its head and opens the door to gamesmanship. Police do not have to give warnings unless the subject is questioned. If they do not initiate questioning of the subject, then the subject's failure to talk to police or failure to ask to talk to police can be used as evidence of guilt at trial, even if, as here, the subject may be unaware of being under suspicion or having pending charges. Surely, our constitutional guaranties, under either or both federal and state provisions, are not so weak and narrow to permit such violation.

In this case, because appellant did not seek out police to talk with them, an act no citizen is required to do, he has been penalized by the discussion in front of the jury of that "failure." This is a violation of his right to remain silent even more egregious than to penalize him for explicitly invoking that right when confronted by police.

I dissent.