kirk alan cantrell v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-029-CR

KIRK ALAN CANTRELL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Kirk Alan Cantrell appeals his conviction for capital murder.  After a jury found Cantrell guilty, the trial court assessed his punishment at life imprisonment.  In five points, Cantrell contends that the trial court abused its discretion by permitting the State, over defense objections, to elicit inadmissible hearsay testimony from two witnesses in violation of the confrontation clauses of the United States and Texas Constitutions and by refusing to include an instruction on the lesser included offense of aggravated kidnapping in its charge to the jury.  We will affirm.

II. Factual Background

On July 21, 1996, Cantrell, Daniel Shockley Miller, and Beverly Cropp participated in a plan to kill Gina Dykman because Cantrell believed that Gina had been looking through his daily planner and gathering information about his illegal drug deals in order to "set him up."  The group lured Gina to a convenience store in Fort Worth where they abducted her.  After tying Gina with duct tape and placing her in the trunk of the car, they took her to a cemetery.  Although the plan was for Cantrell to shoot Gina, he "froze." Ultimately, Miller shot Gina twice, causing her death. 

III. Confrontation Clause Challenges Were Forfeited

In points one through four, Cantrell argues that the trial court abused its discretion by permitting the State, over defense objections, to elicit inadmissible hearsay testimony from two witnesses in violation of the confrontation clauses of the United States Constitution and the Texas Constitution.  The State responds that Cantrell's contentions on appeal concerning constitutional violations do not comport with his "hearsay" objection at trial and have been forfeited.  We agree with the State.

A hearsay objection is not the same as an objection to a violation of confrontation rights.  
Holland v. State
, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991); 
Tatum v. State
, No. 2-04-352-CR, 2005 WL 1189359, at *3 (Tex. App.—Fort Worth May 19, 2005, no pet.); 
see also Thornton v. State
, 994 S.W.2d 845, 853 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that an objection lodged solely as hearsay objection will not preserve error on other grounds).

Cantrell complains about the following testimony from Brandy Davis:

Q.  Okay. Now, at some point that day did [Daniel Miller] tell you that he intended to go someplace to do something?

A.  Later that evening he had to go run an errand.

Q.  Did he tell you what that errand was?

A.  To meet some girl down the street.

Q.  Okay. And did he say something about that girl, why he had to go meet her?

[DEFENSE ATTORNEY]:  Your Honor, we object to any 
hearsay
 from Mr. Miller.

THE COURT:  Yes.  I don't think he got to that point.

[DEFENSE ATTORNEY]: Well --

THE COURT:  I'll overrule that objection. He just asked --

[DEFENSE ATTORNEY]:  He is just asking whether they had a conversation.  If he goes into substance we do.

THE COURT:  Right.

[PROSECUTOR]:  First, did you have a conversation?

A.  I'm sorry?

Q.  First, did you have a conversation with Daniel Miller about where he intended to go that evening?

A.  Yes, sir.

Q.  Okay. Now, before you answer, give him a chance to object. Tell the members of the jury what Daniel Miller said he was -- where he was going to go and who he was going to meet.

[DEFENSE ATTORNEY]:  That is my cue, Your Honor. 

THE COURT:  All right. Now object.

[DEFENSE ATTORNEY]:  
Hearsay.
 

THE COURT:  Mr. Levy.

[PROSECUTOR]:  We say it's a declaration against interest.

[DEFENSE ATTORNEY]: It's not a declaration against my client's. It may be a declaration against Mr. Miller's interest. 

[PROSECUTOR]:  Right.

[DEFENSE ATTORNEY]:  We shouldn't have to bear the brunt of what is -- what is against his interest, Your Honor.  It's not as to our client.  It's an exception as to Mr. Miller.

THE COURT:  All right.  I'm going to overrule it.

[DEFENSE ATTORNEY]:  Okay.  May we have -- may we have a running objection to each and every question that elicit[s] a hearsay response in the context of this particular conversation and we have further objections thereafter?

THE COURT:  Yes, you may. 

[DEFENSE ATTORNEY]:  Thank you. 

[PROSECUTOR]:  Okay. Now, as to this, I don't want to talk about any other things Daniel Miller told you, just one thing.  Did Daniel Miller tell you something about who he was going to meet?

A.  Yes, sir.

Q.  What did he tell you?

A.  He said if Kirk calls, tell him that I went to go take care of what we had talked about.

Q.  If Kirk calls, tell him I went to go take care of what we talked about?

A.  Yes, sir.  [Emphasis added.]

Cantrell also complains about the following testimony from Michael Jeffreys:

Q.  In July of 1996, I want to direct your attention to a couple of days before, or -- or the day or so before July the 21st
.  Did you have a conversation with Mr. Miller about something that he needed done?

A.  Yes.

Q.  Or something that he wanted to do?

A.  Something that -- something that had to be done. 

Q.  Okay.  Something that had to be done?

A.  Yes.

Q.  And did he tell you what it is that had to be done?  And wait until -- see if there is a response.

A.  Yes.

[DEFENSE ATTORNEY]:  I don’t care as long as we don’t go into the substance.  Yes is okay.

[PROSECUTOR]:  Well the next question -- you may as well keep standing.

[DEFENSE ATTORNEY]:  I am.

[PROSECUTOR]:  All right.  What is it that Mr. Miller said he had to do?

[DEFENSE ATTORNEY]:  Objection, Your Honor.  
Hearsay
, no showing that our client was present at that conversation.  He shouldn't be burdened with whatever kind of admission against penal interest Mr. Miller undoubtedly made on that occasion.

We object to it, not an exception under the 
hearsay
 rule. 

THE COURT:  All right.  Overrule that objection.

[DEFENSE ATTORNEY]:  Please not our exception and may we have a running objection?

THE COURT:  Yes, you may. 

[DEFENSE ATTORNEY]:  Thank you. 

THE COURT:  You can answer. 

THE WITNESS:  Okay.  What was it that he said had to be done? 

[PROSECUTOR]:  Yes.

A.  I was told someone had to be gotten rid of and dealt with, and you know, by means of getting rid of them.

Q.  So Daniel Miller said they had to get rid of someone? 

A.  Yes.

Q.  Did he say why? 

A.  Yes.

Q.  Why?

A.  Because she was believed to be an informant and they had more than just her writing names down.

Q.  Okay. Did -- did -- did he indicate, or did he say to you, who is was that had to be gotten rid of?  Do you know that?

A.  Yes.

Q.  Okay.  Who did he tell you had to be gotten rid of?

A.  I didn't -- all I knew her first name at the time was Gina. 

Q.  Okay.  That is all he told you, Gina?

A.  Yes.  [Emphasis added.]

As the record demonstrates, Cantrell objected to the above testimony during the trial based solely on hearsay.  On appeal, however, he contends that the admission of the testimony from both witnesses denied him his right of confrontation.  Thus, Cantrell's complaint on appeal does not comport with his objection at trial, so any alleged error is forfeited.  
See Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (stating that complaint made on appeal must comport with complaint made in trial court, or error is forfeited).  We overrule Cantrell's first four points.

IV. No Lesser Included Offense Instruction Was Required

In his fifth point, Cantrell argues that the trial court abused its discretion by refusing to include an instruction on the lesser included offense of aggravated kidnapping in its charge to the jury and that this refusal constituted reversible error.  Specifically, Cantrell argues that he only planned and participated in the kidnapping of Gina and that Miller was responsible for Gina’s murder.  The State responds that Cantrell was not entitled to submission of aggravated kidnapping as a lesser included offense because the jury was charged on the law of parties. 

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). The first step is to decide whether the offense is a "lesser included offense" as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann
. art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.

The second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater.  
Feldman v. State
, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); 
Moore
, 969 S.W.2d at 8.  The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense.  
Id
.  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id
.  If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
See Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

The State does not dispute that aggravated kidnapping is a lesser included

offense of capital murder as it was charged in the indictment in this case.  Thus, the only issue is whether there is some evidence that would permit a rational jury to find that Cantrell is guilty only of the lesser offense and not of the greater.

The testimony at trial revealed that Cantrell told at least two people that he killed Gina because she was a snitch.  He told one of those individuals that Miller actually killed Gina to prove his loyalty to Cantrell.  Cropp, one of the participants in the kidnapping and murder, testified that Cantrell started inciting Miller and her about Gina a couple of days before the murder; Cantrell told them that he caught Gina taking phone numbers from his daily planner and wanted her killed because he thought that she was going to turn him in to the authorities for dealing drugs.  On the day of the murder, Cropp testified that they all made a plan to have Miller meet Gina at a convenience store.  Cropp further testified that she and Cantrell parked across the street from the convenience store where Gina met Miller and that Miller immediately came across the street after Gina arrived.  Cantrell and Cropp tied up Gina with duct tape and put her in the trunk.  They drove around town in two cars before meeting up again at the convenience store where everyone got into Miller's car.  Cantrell was the one who gave the directions to the cemetery.  Once at the cemetery, Cropp took Gina out of the trunk, and they all dragged her into the cemetery.  Cantrell stood with the gun pointed at Gina's head, but he did not pull the trigger.  Miller eventually took the gun from Cantrell and shot Gina. 

Here, the jury charge included the following paragraphs:

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Kirk Alan Cantrell, in the County of Tarrant and State of Texas, on or about the 21st day of July, 1996, did then and there intentionally cause the death of an individual, Gina Dykman, by shooting Gina Dykman with a firearem, and the said Defendant was then and there in the course of committing or attempting to commit the offense of Kidnapping of Gina Dykman, or that the Defendant, Kirk Alan Cantrell, acting with the intent to promote or assist the commission of the offense of Capital Murder, if any, solicited, encouraged, directed, aided, or attempted to aid Daniel Miller and Beverly Cropp in the commission of the offense of Capital Murder, if any, or that the Defendant, Kirk Alan Cantrell, Daniel Miller[,] and Beverly Cropp agreed to kidnap Gina Dykman, and that Daniel Miller did then and there intentionally cause the death of Gina Dykman, by shooting her with a firearm, in the course of committing or attempting to commit the offense of kidnapping of Gina Dykman, and that the shooting of Gina Dykman by Daniel Miller, if there was such, was done in furtherance of the conspiracy to kidnap Gina Dykman, if any, and was an offense that should have been anticipated as a result of carrying out the conspiracy, then you will find the Defendant, Kirk Alan Cantrell, guilty of the offense of Capital Murder as charged in the Indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will acquit the Defendant of the offense of Capital Murder and say by your verdict "Not Guilty[."]

For Cantrell to be entitled to the lesser included charge of aggravated kidnapping, some evidence must exist that would permit a rational jury to find that Cantrell committed only the offense of aggravated kidnapping.  No such evidence exists; instead, the only evidence shows that Cantrell's plan from the beginning included killing Gina.  Cantrell's argument—that Miller's infliction of the mortal wounds exonerated Cantrell—ignores the law of parties.  
See
 
Tex. Penal Code Ann
. §§ 7.01-.02 (Vernon 2003) (allowing the State to enlarge a person's criminal responsibility to acts in which he may not be the primary actor if certain criteria are met). We hold that the record does not reflect the existence of evidence that would permit a rational jury to find that Cantrell is guilty only of the lesser offense and not of the greater.  
See Moore
, 969 S.W.2d at 8.  Accordingly, the trial court did not err by denying the requested charge on the lesser included offense of aggravated kidnapping.  We overrule Cantrell's fifth point.

V. Conclusion

Having overruled Cantrell's five points, we affirm the trial court's judgment.

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 30, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.