COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-219-CR

                                        NO. 2-08-220-CR

                                        NO. 2-08-221-CR

 

 

JAMES LLOYD FANNIN                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 213TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant James Lloyd Fannin argues that the
trial court erred by denying his motion to suppress regarding evidence found
during a search after he was stopped for a traffic violation.  In one point, Fannin argues that the trial
court found him guilty of unlawful possession of a firearm, escape, and possession
of a controlled substance based on the evidence that he claims should have been
suppressed.  We will affirm.

At roughly 10:00 p.m. on April 10, 2007, Fort
Worth police officer Joel Parsons was patrolling the east side of Fort Worth in
a marked police vehicle as a member of the East Zero Tolerance Unit.[2]  Parsons testified that he witnessed Fannin
make a left turn without signaling. 
Parsons said that he initiated a stop but Fannin did not immediately
pull over.  Parsons testified that he Aissued a
few blasts@ with his audible siren.  Fannin still did not pull over.  Parsons said he then witnessed Fannin Adropping
his shoulders, dipping a little bit.@  Parsons said that movements like this are
consistent with concealing or retrieving something, possibly a weapon.  Fannin eventually pulled his vehicle into a
private driveway.








Parsons said that he called for backup.  Parsons approached Fannin and asked for
Fannin=s driver
license and insurance verification. 
Parsons said Fannin appeared nervous and was looking around as if he was
Aabout to
flee or looking for escape routes.@  At this same time, Parsons observed Asubjects
at . . . the residence [that Fannin had] pulled into . . .
at the screen door popping out their head[s].@  Parsons said he made the decision not to ask
Fannin to get out of the car until his backup arrived.  While he awaited backup, Parsons ran routine
checks on Fannin and discovered that Fannin had prior convictions for
aggravated robbery and unlawful carrying of a weapon.

After the assisting officer arrived, Parsons
briefed the additional officer and then had Fannin exit his vehicle.  Parsons conducted a pat-down and felt what he
Aimmediately
recognized to be a live round of ammunition@ in
Fannin=s right
front pants pocket.  Parsons then looked
under the front seat of Fannin=s
vehicle and found a revolver.  Parsons
said he then informed Fannin that he was under arrest and handcuffed him.  As Parsons conducted a more thorough search
of Fannin=s vehicle, Fannin ran away.  The two officers pursued Fannin, who fell but
continued Akicking, yelling, and pulling at@ the
officers.  After subduing Fannin, Fannin
yelled at the inhabitants of the residence he had pulled into, stating AGet it
all out.  Get it all out of the car.@  The officers eventually discovered crack
cocaine, drug paraphernalia, and additional ammunition.








Fannin was charged with unlawful possession of a
firearm, escape, and possession of a controlled substance.  Fannin waived his right to a jury, and the
trial court found Fannin guilty on each charge. 
The trial court sentenced Fannin to fifteen years=
confinement for possession of a controlled substance, twenty-five years=
confinement for escape, and thirty-five years=
confinement for possession of a firearm by a convicted felon.  The trial court set the sentences to run
concurrently.  This appeal followed.

In his sole point, Fannin argues that Parsons=s having
stopped him for failure to signal was merely pretextual and that Parsons=s motive
was to search him and his vehicle.  Thus,
Fannin argues that the evidence seized from him and his vehicle should have
been suppressed, that his convictions based on that evidence should be
reversed, and that he is entitled to a new trial.  We disagree.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App.
2004).  And the complaint made on appeal
must comport with the complaint made in the trial court or the error is
forfeited.  Heidelberg v. State,
144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Vafaiyan v. State, 279
S.W.3d 374, 383 (Tex. App.CFort
Worth 2008).

In his motion to suppress, Fannin argued that his
Adetention,
search and arrest . . . was unconstitutional based on the teachings of the
Fourth Amendment of the United States Constitution.@  But trial counsel admitted that the motion
was Ajust a
broad Fourth Amendment motion.@  And trial counsel specifically stated to the
trial court that Awhat decides this case is
[whether Parsons acted] in a Constitutional manner when he pulled [Fannin] out
of the vehicle for the patdown.@  Trial counsel further clarified his objection
by stating, AI think the critical point is
did [Parsons] have reasonable suspicion under Terry to walk back up to
that vehicle, have [Fannin] get out of the vehicle [and] pat him down[?]@  It is clear to this court that trial counsel
was objecting to Parsons=s having patted Fannin down
after Parsons had stopped Fannin for the alleged traffic violation, run a
background check, and then returned to the car and asked Fannin to step out of
his vehicle so that Parsons could frisk him. 
This is a distinctively different argument than what Fannin now argues
on appeal.








Fannin now challenges the legality of the
stop.  Fannin argues that Parsons stopped
Fannin under the pretext of a traffic violation because Parsons wanted to
search Fannin and his vehicle. 
Specifically, Fannin argues that while Parsons Amay have
stated that he was making a traffic stop . . . [Parsons] was really
interested in searching [Fannin] and his vehicle.@  But trial counsel made it clear during the
motion to suppress hearing that he was not challenging the traffic stop but
rather Parsons=s having frisked Fannin.  Because the complaint Fannin now makes on
appeal does not comport with the complaint made to the trial court, he has
forfeited this error, if any.  See
Heidelberg, 144 S.W.3d at 537.  We
overrule Fannin=s sole point and affirm the
trial court=s judgments.

 

PER
CURIAM

 

PANEL:  MEIER, J.; CAYCE, C.J.; and McCOY, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 6, 2009











[1]See Tex. R. App. P. 47.4.





[2]Parsons=s patrol targeted the
east side of Fort Worth based on recent crime trends.