In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00369-CR
_____

ANDREW MINER COLVIN JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 258th District Court
San Jacinto County, Texas
Trial Cause No. 11,177

**MEMORANDUM OPINION**

Appellant Andrew Miner Colvin Jr. challenges his conviction for assault by occlusion against a person with whom he had a dating relationship. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B) (Supp. West 2015). In three issues, Colvin argues the trial court erred in allowing the State to elicit testimony in violation of his Fifth Amendment right against self-incrimination, erred in allowing the State to elicit testimony about his post-arrest silence through a witness for the prosecution, and erred in allowing the State to cross-examine him with his post-arrest silence in

violation of article 1, section 10 of the Texas Constitution. We affirm the trial court's judgment.

## Trial Court Objections

Colvin's brief addresses two instances in the trial when the State developed testimony about Colvin's post-arrest silence. In response to a report of assault, Deputy Jared Zolman executed a warrant for Colvin's arrest and described the arrest, as follows:

> [By Prosecutor:] Q. Okay. When the warrant was executed, did the Defendant seemed [sic] surprised?
>
> [Witness] A. Yes, sir, I would say so.
>
> Q. Okay. Was he initially -- was he asked if he knew why he was being arrested?
>
> A. Yes, sir.
>
> Q. And what was his initial response to that?
>
> A. Didn't say anything.
>
> Q. Didn't say anything? Was he then told what he was being arrested for?
>
> A. Yes, sir.
>
> Q. And what was his response?
>
> [Defense Counsel]: Your Honor, I would object to that statement. That's a statement made in custody, and he was not -- the record hasn't reflected he was Mirandized at that point.

2

That was an inadmissible statement but -- can we approach, your Honor?

THE COURT: Okay.

(At the bench)

[Defense Counsel]: Your Honor, I would object to that statement. Deputy Zolman's testimony is that he was not Mirandized. That was a statement as to why he was being arrested.

That is an inadmissible statement being made as he was in custody.

[Prosecutor]: Judge, the State -- the warrant was executed at that point. We didn't go into the specifics of the arrest but anything that the Defendant said, he's a party to this.

THE COURT: This is kind of, you know --

[Prosecutor]: It was just a response to what -- when he was -- when he was told what he was arrested for, what his response was, and that's all I'm asking. I'm not asking for any detailed testimony, just what his response was.

[Defense Counsel]: Well, your Honor, this is the first I've ever heard of any statement that my client has made.

THE COURT: Well, I'll allow that. But you're not going any further with it?

[Prosecutor]: No, sir. No, sir.

THE COURT: Okay. All right.

(Open court)

THE COURT: Court overrules the objection.

You may answer the question.

Q. (By [Prosecutor]) So what was his response when he was asked -- when he was told what he was being arrested for?

A. It was, "oh, okay."

Q. Okay. Now, let me ask you: At any time during his arrest when he was being Mirandized or having cuffs put on or anything like that, did he ever say anything about a gun being pulled on him, whether or not he was a victim of a crime or the assault was -- he was -- it was self-defense? Did you ever hear those words come out of his mouth?

A. No, sir, I didn't.

Q. Okay. Now, let me ask you when he was -- when the warrant was served and he was arrested, was the Defendant armed?

A. Yes, sir.

Q. Did he have to be disarmed before he was taken into custody?

A. Yes, sir, he did.

[Prosecutor]: I'll pass the witness.

Colvin testified on his own behalf. He testified, in part, that in two previous arguments, the complaining witness pointed a loaded firearm at him. Colvin claimed the choking incident he was on trial for occurred when he put the complaining witness in a basket hold because his loaded .357 was on the counter

4

and he feared for his life. According to Colvin, the complaining witness had her eye on the gun and reached out her hand towards the gun from a distance of twelve feet.

The State developed cross-examination testimony concerning Colvin's post-arrest silence, as follows:

> [By Prosecutor] Q. When you were arrested, did you tell the police officer that she had pulled a gun on you?
>
> [Defendant] A. No, sir. I did tell --
>
> Q. Okay. They indicated --
>
> A. I did tell the officers that she bit me.
>
> Q. Okay. They indicated to you that you were being arrested for assault, correct?
>
> A. Yes, sir.
>
> Q. And they were putting you in handcuffs and taking you away?
>
> A. Yes, sir.
>
> Q. And you never thought to mention --
>
> [Defense Counsel]: Your Honor, I would object to this statement. Defendant has no burden to make a statement to police. He has a Fifth Amendment right against self-incrimination. That right cannot be used to incriminate [him].
>
> [Prosecutor]: Judge, I --

THE COURT: That's overruled.

Cross-examination.

Q. (By [Prosecutor]) And at that point when you're in cuffs and you're being taken away and you've been told you're arrested, it never occurred to you to say, hey, she had a gun; I was trying to -- I was trying to stop that?

A. Sir, I've been on many arrest scenes; and the first thing you need to do is shut up when you've been arrested.

Q. Okay. But that never occurred to you to defend yourself and say, hey, this wasn't self-defense?

[Defense Counsel]: Your Honor, we would renew our objection.

THE COURT: Objection overruled.

Q. (By [Prosecutor]) Okay. Now, how long were you in jail?

A. Six and a half weeks.

Q. Okay. Six and a half weeks?

A. Yes, sir.

Q. Did you ever give a statement to anybody in the jail, any law enforcement official that you were innocent --

A. Yes, sir. When I first got in the jail, I -- the booking officer, I showed him the scar on this arm and said [the Complaining Witness] did that to me.

Q. That's not the same. Obviously, [the Complaining Witness] did it to you. [The Complaining Witness] doesn't say she didn't do it to you. Everybody said [the Complaining Witness] did it to you.

6

A. Okay.

Q. Nobody disputes the fact that [the Complaining Witness] bit your arm --

[Defense Counsel]: Your Honor, counsel is testifying.

THE COURT: Y'all just ask questions.

Q. (By [Prosecutor]) Okay. So you never asked to speak with anybody in the jail to give a statement?

A. No, sir.

Q. In the six weeks you were there?

A. No, sir.

**Preservation of Error**

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a). To preserve an issue for appellate review, the complaint on appeal must comport with the objection at trial, and an objection stating one legal theory may not be used to support a different legal theory on

7

appeal. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

Issues two and three complain of the admission of evidence concerning Colvin's post-arrest silence but the issues fail to comport with an objection made in the trial. When Deputy Zolman was asked how Colvin responded when he was told why he was being arrested, Colvin objected, "That's a statement made in custody, and he was not -- the record hasn't reflected he was Mirandized at that point[,]" and "[t]hat is an inadmissible statement being made as he was in custody." This objection complained of unwarned, custodial interrogation in violation of the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). When the prosecutor cross-examined Colvin about his failure to mention that the complaining witness tried to get his gun, Colvin objected to the question specifically on Fifth Amendment self-incrimination grounds. The only other objection made by Colvin in that exchange was an objection that opposing counsel was testifying.

A similar situation occurred in *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Defense counsel objected on Fifth Amendment grounds when the defendant was asked about his willingness to speak to the investigator and whether he knew a detective was trying to contact him. *Id.* at 536. Heidelberg contended on appeal that the trial court erred in allowing the State to refer to his post-arrest silence in violation of Article I, section 10 of the Texas Constitution. *Id.* at 537. The Court of Criminal Appeals held that the complaint was waived. *Id.* at 542-43. The Court noted there was "no indication in the record that the judge understood [Heidelberg] was trying to invoke a protection different from the Fifth Amendment protection he was citing." *Id. at* 541. As was the case in *Heidelberg*, Colvin invoked the protection of the Fifth Amendment and *Miranda* but never mentioned the state constitution or a case that was decided under article I, section 10 of the Texas Constitution.[1] We overrule issues two and three because Colvin failed to preserve error on those grounds. *See* Tex. R. App. P. 33.1(a).

---

[1] Colvin suggests his objection to the prosecutor's cross-examination differs from the defendant's objection in *Heidelberg*. In *Heidelberg*, counsel stated, "Objection, Your Honor. This goes to the Fifth Amendment right, my client's Fifth Amendment. He doesn't have to talk to anybody[,]" and "Objection, Your Honor. My client – all of this line of questioning goes to the Fifth Amendment. My client does not have to speak with anyone about it." 144 S.W.3d at 536. Here, counsel stated, "Your Honor, I would object to this statement. Defendant has no burden to make a statement to police. He has a Fifth Amendment right against self-incrimination. That right cannot be used to incriminate [him]." In Colvin's case,

## Fifth Amendment Issue

In issue one, Colvin complains the trial court erred in permitting the prosecutor, over Colvin's objection, to elicit testimony in violation of Colvin's Fifth Amendment right against self-incrimination. The State argues Colvin was not being interrogated when Deputy Zolman told Colvin why he was being arrested and Colvin responded, "oh, okay."

The State may not use statements elicited through custodial interrogation of the defendant "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. We conduct a bifurcated review of a trial court's ruling on a *Miranda*-violation claim, affording almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and reviewing de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012).

---

the State was cross-examining Colvin about something that occurred when Colvin was in custody, but there is no indication in the record that the trial court understood Colvin's objection invoked the protection of the Texas Constitution. *See id.* at 542-43. Article I, section 10 of the Texas Constitution protects a defendant from impeachment with his post-arrest, pre-*Miranda* silence while the Fifth Amendment protects post-arrest silence made only after the suspect has been Mirandized. *See id.* at 537; *Sanchez v. State*, 707 S.W.2d 575, 579-80 (Tex. Crim. App. 1986).

10

The State concedes that Colvin was in custody, but argues his right against self-incrimination was not violated because Colvin was not being interrogated. Interrogation includes express questioning and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*. 446 U.S. 291, 301 (1980). Offhand remarks, not designed to elicit any kind of incriminating response, do not constitute interrogation. *Id.* at 303; *Janecka v. State*, 739 S.W.2d 813, 828-29 (Tex. Crim. App. 1987).

This case is similar to *Earnhart v. State*, 582 S.W.2d 444, 448 (Tex. Crim. App. 1979). In *Earnhart*, the defendant had been arrested but had not yet received his *Miranda* warnings when he went into a bedroom to get a shirt. *Id.* He picked up a shirt and remarked that the shirt had blood on it and he wanted to get a clean one. *Id.* The trial court sustained the defendant's objection to testimony concerning the question and response regarding whether it was his shirt, but the defendant's remark about the shirt being bloody was properly admitted because it was a volunteered statement not made in response to interrogation. *Id.* Here, Colvin did not respond when Deputy Zolman asked Colvin if he knew why he was being arrested. Deputy Zolman's subsequent statement to Colvin merely informed Colvin

11

what he was being arrested for, and was not designed to elicit a response. We overrule issue one and we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 4, 2015
Opinion Delivered June 15, 2016
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.