JONES V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-159-CR

DAVID DEWAYNE JONES APPELLANT

A/K/A DEWYEN DAVID JONES

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant David Dewayne Jones a/k/a Dewyen David Jones appeals his convictions for aggravated sexual assault of a child under fourteen and indecency with a child by exposure.  In points one through four, appellant contends that the evidence is legally and factually insufficient to support the jury’s verdict.  In his fifth point, appellant complains that the trial court erred by admitting medical testimony that directly commented on the credibility of the complainant.  We affirm.

II.  Background Facts

In 2003, A.C., a three-year-old child, made statements to her mother, Deitric, that appellant had touched her inappropriately.  Appellant, Deitric’s boyfriend, lived with Deitric and her three children, including A.C.  A.C. told Deitric that appellant touched her “pee-pee.”  Deitric then confronted appellant about the incident, and he denied touching A.C.  Appellant then asked A.C. if he had touched her inappropriately, and A.C. said that he had not.  However, on December 3, 2003, A.C. told Deitric that appellant had touched her inappropriately and that “it hurt.”  Deitric then confronted appellant again and told him that he could either leave the house or sleep in the living room. Appellant told Deitric that he was not going to sleep on the couch and called the police.  When Chad Morgan, an officer with the Fort Worth Police Department, arrived, appellant was standing in the front yard and told Officer Morgan that he called the police because Deitric accused him of touching A.C. inappropriately.  Officer Morgan then interviewed Deitric and A.C., and after learning that the assault had not happened recently, he took down the information and left without arresting appellant.  Officer Morgan then contacted the crimes against children unit to investigate the matter.  After A.C. was interviewed and given a medical examination, the grand jury indicted appellant for aggravated sexual assault and indecency with a child.

The indictment charged appellant in count two with aggravated sexual assault of a child under fourteen by intentionally or knowingly causing A.C.’s sexual organ to contact appellant’s sexual organ, in count three with aggravated sexual assault of a child under fourteen by intentionally or knowingly inserting his finger into A.C.’s sexual organ, and in count eight with indecency with a child by exposing his genitals to A.C.  The jury found appellant guilty as to all three counts, and the trial court assessed his punishment at fifty years’ confinement for count two, fifty years’ confinement for count three, and twenty years’ confinement for count eight.  Appellant is appealing only his convictions and sentences for counts two and eight.  

III.  Legal and Factual Sufficiency

In points one through four, appellant argues that the evidence is legally and factually insufficient to establish that he committed the offenses of aggravated sexual assault of a child under fourteen in count two and indecency with a child by exposure in count eight. 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Section 22.021 of the penal code states that a person commits the offense of aggravated sexual assault “if the person intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.”  
Tex. Penal Code Ann.
 § 22.021(a)(1)(B)(iii) (Vernon Supp. 2005).  Section 21.11 provides, 

(a) A person commits the offense [of indecency with a child], if, with a child younger than 17 years and not the person’s spouse, whether the child is of the same or opposite sex, the person:

. . . . 

(2)(A) with intent to arouse or gratify the sexual desire of any person exposes the person’s anus or any part of the person’s genitals, knowing the child is present.

Id.
 § 21.11 (a)(2)(A) (Vernon 2003).  

C.  Applicable Facts

At trial, Deitric testified that in April 2003, appellant moved in with her and her three children, including A.C, who was three years old at the time. Deitric stated that she had a sexual relationship with appellant after he moved in.  She said that there were two bedrooms in the house and that she, appellant, and A.C. slept in one bedroom,
(footnote: 2) and her two sons slept in the other bedroom.  Deitric testified that in September 2003, A.C. began to be ashamed of her body and did not want Deitric to see her without her clothes on.  Deitric asked A.C. if anyone had touched her “privates,” and A.C. said that appellant touched her “private” with his hand.  Deitric then called appellant, who was at work, and asked him if he had touched A.C. inappropriately.  After appellant received the phone call, he left work, went home, and asked A.C. if he had touched her.  Deitric stated that appellant confronted A.C. in a loud voice and was intimidating.  A.C. said that appellant did not touch her inappropriately.  Nonetheless, Deitric moved A.C. out of the bedroom that she and appellant were in and moved her into the bedroom with A.C.’s brothers.  Deitric told her oldest son to lock the door at night and put a knife in the door so that no one could get into the bedroom.

A short time after A.C. moved into the other bedroom, while Deitric was giving A.C. a bath, A.C. told her that she was telling the truth about appellant touching her.  A.C. told Deitric that appellant touched her “pee-pee” and that it hurt.  When appellant came home that night, Deitric told appellant that A.C. told her that appellant had touched her inappropriately and that he could move out of the house or sleep in the living room.  Appellant told Deitric that he was going to leave and then called the police.  Appellant demanded that A.C. get tested to determine if she had been sexually assaulted.  When the police arrived, appellant told the police officer that he called the police because Deitric accused him of sexually assaulting A.C.  After the police talked with appellant and A.C., they left, without arresting appellant.

Deitric then testified that several weeks later, she talked with Detectives Easter and Benjamin about the allegations.  After talking with the detectives, Deitric took A.C. to Cook Children’s Medical Center in Fort Worth, Texas, for a medical examination.

Deitric also testified that A.C. told her that A.C. saw “warm ice cream come out of [appellant’s] pee pee.”  She further testified that A.C. did not have any physical injuries.  Deitric stated that she believed A.C. when A.C. told her that appellant touched her and that “it hurt” because Deitric did not think that A.C. would know that.

A.C. testified that appellant had touched one of her “parts.”  She stated that she had her clothes on and that appellant touched her underneath her clothes.  A.C. said that appellant’s hand went up her leg and that he touched her genitals with his hands.  A.C. further testified that appellant touched the “inside part” of her “private” with his finger and that he moved his finger a little bit.  A.C. testified that appellant only touched her one time.  A.C. stated that she did not know where she was when appellant touched her but that they were not at home.  She said that appellant was wearing pants but that he did not have a shirt on during the assault.  Additionally, A.C. testified that appellant’s pants stayed zipped and that she did not see his penis.  After the assault, A.C. told Deitric, and Deitric called the police.  A.C. stated that she never went to a doctor to talk about the assault and that appellant never confronted her about the assault.  A.C. stated that she knew that appellant’s penis was brown and hard, that appellant told her that, and that she did not see appellant’s penis.  Additionally, A.C. stated that she did not see anything come out of appellant’s penis, that appellant did not say anything during the assault, and that she was afraid of appellant.  A.C. further stated that Deitric was at home watching TV when the assault occurred.

Officer Morgan testified that on December 3, 2003, he responded to a call at Deitric’s house.  He stated that appellant was in the front yard when he arrived and that appellant told him that Deitric called him at work and accused him of inappropriately touching A.C.  Appellant told Officer Morgan that he was not going to sleep on the couch because he was the man of the house and because he wanted A.C. examined by a doctor.  After another officer arrived, Officer Morgan went inside the house and spoke with Deitric and A.C.  Officer Morgan testified that A.C. told him that appellant “touched me there” and pointed to her genitals.  He stated that he did not take A.C. to the hospital because there would not be any evidence because A.C. told him that it did not happen recently.  Additionally, appellant voluntarily left the house while the officers were still there, however; he was not arrested.

Martha Easter, a detective with the Fort Worth Police Department in the crimes against children unit, stated that she was assigned to A.C.’s case on December 4, 2003.  Detective Easter contacted Deitric and appellant about the assault.  She stated that she talked with Deitric because she was the first person to whom A.C. made an outcry statement.   Detective Easter stated that after receiving the report, she arranged for A.C. to be interviewed and to have a sexual assault examination.  On February 4, 2004, A.C. had the sexual assault examination, even though two months had passed since appellant called the police.  Detective Easter stated that A.C. was not able to tell her the exact date that the assault occurred on but that this was not unusual in child victims. Additionally, Detective Easter testified that children do not typically lie about being sexually assaulted.  On January 9, 2004, appellant gave a written statement to Detective Easter in which he denied touching A.C. inappropriately. 

Dr. Jamye Coffman, the medical director of the care team abuse clinic at Cook Children’s Medical Center, testified that she examined A.C. on February 4, 2004, when A.C. was four-years-old.  She stated that A.C. did not know the specific dates of the sexual assaults.  Dr. Coffman stated that the reason that A.C. was not examined earlier was because the time frame to collect evidence in prepubertal children is twenty-four hours and that twenty-four hours had passed since A.C. was assaulted.  She stated that Deitric told her that she asked A.C. if anyone had touched her “pee pee” and that A.C. told her that appellant did.  Dr. Coffman further testified that she spoke with A.C. and that A.C. told her that appellant touched her “here” with his hand and pointed to her genitals.  She stated that A.C. said that appellant pulled down her pants and his pants and that appellant showed her his penis.  A.C. told Dr. Coffman that appellant put his penis into her vagina by pointing to her genitals.  A.C. further stated that appellant put his penis “way inside” her bottom and that it hurt but that she did not think that it bled.  A.C. further stated that appellant’s penis “squirted” on her chest, abdomen, and thighs, that it looked like water and ice cream,
(footnote: 3) and that it was “warm.”  A.C. also stated that appellant licked her face. 

At trial, Dr. Coffman stated that A.C.’s medical examination was normal but that A.C. did have some dry skin.  Additionally, she thought that the exam was inconsistent with A.C.’s outcry statement to her because there was no physical evidence of penetration of the vagina or anus.  However, A.C.’s knowledge on sexual matters was inconsistent with a four-year-old’s normal knowledge.  However, Dr. Coffman testified that A.C.’s diagnosis was “sexual abuse with a normal exam,” but also said there was not any evidence of abuse. 

D.  Analysis

1.  Count Eight:  Indecency with a Child by Exposure

In his first and third points, appellant contends that there is no evidence to demonstrate that he intentionally or knowingly exposed his penis to A.C. Appellant asserts that the only evidence submitted at trial concerning this offense was from A.C. who stated that she knew appellant’s penis was “brown” because he told her.  Additionally, to support his contention, appellant points to A.C.’s statements that she denied seeing appellant’s penis twice during her testimony, that appellant did not touch her with his penis, that she did not see anything come out of appellant’s penis, and that she did not remember anything about “ice cream.”  However, Deitric testified that A.C. told her that she saw “warm ice cream” come out of appellant’s “pee pee.”  A.C. further stated that appellant’s penis “squirted”; and indicated that it went on her chest, abdomen, and thighs; and stated that it looked liked ice cream and was warm.  Additionally, Dr. Coffman stated that A.C. told her that appellant pulled down his pants and showed her his penis.  A.C. further testified that appellant’s penis was “hard” and “brown.”

 
We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant intentionally or knowingly exposed his penis to A.C.; therefore, we overrule appellant’s first point.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  We overrule appellant’s third point. 

2.  Count Two:  Aggravated Sexual Assault of a Child

In appellant’s second and fourth points, he complains that the evidence is legally and factually insufficient to demonstrate that he intentionally or knowingly caused A.C.’s sexual organ to contact appellant’s sexual organ. Appellant asserts that the only evidence presented at trial supporting his conviction for this offense was from Dr. Coffman.

At trial, A.C. testified that appellant only touched her genitals with his hand and fingers.  At trial, A.C. said that she did not see appellant’s penis and that his pants were zipped, but she told Dr. Coffman that appellant took off her clothes and his clothes.  Additionally, Deitric testified that A.C. told her that appellant touched her genitals with his hand only.

However, Dr. Coffman testified that when she performed a medical examination on A.C.,  A.C. told her that appellant pulled her pants down and his pants down and that appellant showed A.C. his penis.  A.C. also told Dr. Coffman that appellant put his penis in her vagina.  Dr. Coffman further testified that A.C. told her that appellant put his penis “way inside” her bottom and that it hurt.  After examining A.C., Dr. Coffman testified that there was, however, no physical evidence of penetration of A.C.’s vagina or anus.   Appellant did not object to Dr. Coffman’s testimony regarding A.C.’s statement about the offense.
(footnote: 4)  

In deciding whether the evidence is sufficient to establish that appellant sexually assaulted A.C. by contact, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.  
Poindexter v. State
, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).  Once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its fact finding process, an appellate court cannot deny that evidence’s probative value or ignore it in its review of the sufficiency of the evidence.  
Id.  
Here, appellant failed to object to Dr. Coffman’s testimony about A.C.’s statement regarding the offense.  Therefore, the jury was entitled to weigh the testimony in its fact finding process.
 Id.
  

We hold that the evidence, when viewed in the light most favorable to the verdict, supports the jury’s verdict that appellant intentionally or knowingly caused A.C.’s sexual organ to contact appellant’s sexual organ.  Thus, we overrule appellant’s second point.  Further, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  We overrule appellant’s fourth point. 

IV.  Medical Testimony

In his fifth point, appellant contends that the trial court erred by admitting Dr. Coffman’s testimony that commented on A.C.’s credibility.  Specifically, appellant contends that Dr. Coffman’s diagnosis—that “there was sexual abuse with a normal exam”—is the only evidence that the jury could have relied on to convict appellant of counts two and eight and that all this testimony amounts to is a comment on A.C.’s credibility and is therefore inadmissible.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).
  

Here, appellant objected to Dr. Coffman’s testimony on the basis of hearsay and improper medical history only.  Appellant failed to object to the testimony as a comment on A.C.’s credibility or bolstering the witness.  The complaint on appeal must comport with the complaint made in the trial court or the error is forfeited.  
Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); 
Bell
 
v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  We determine that appellant did not object on the basis of a comment on A.C.’s credibility or bolstering the witness and that his complaint at trial does not comport with his complaint on appeal.  
See 
Tex. R. App. P.
 33.1(a)(1). Thus, we overrule appellant’s fifth point.

V.  Conclusion

Having overruled appellant’s five points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: April 27, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Deitric stated that A.C. slept on a pallet by the bed in the bedroom.  

3:
Dr. Coffman said that A.C.’s statement that “ice cream” squirted from appellant’s penis is consistent with ejaculation.

4:
Appellant did object once to Dr. Coffman’s testimony about what Deitric told her about the offense as hearsay and once to assuming facts not in evidence.