COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-05-159-CR

 

 

DAVID DEWAYNE JONES                                                     APPELLANT

A/K/A
DEWYEN DAVID JONES

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT
 COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant David Dewayne Jones
a/k/a Dewyen David Jones appeals his convictions for aggravated sexual assault
of a child under fourteen and indecency with a child by exposure.  In points one through four, appellant
contends that the evidence is legally and factually insufficient to support the
jury=s verdict.  In his fifth point,
appellant complains that the trial court erred by admitting medical testimony
that directly commented on the credibility of the complainant.  We affirm.

II.  Background Facts








In 2003, A.C., a
three-year-old child, made statements to her mother, Deitric, that appellant
had touched her inappropriately. 
Appellant, Deitric=s boyfriend,
lived with Deitric and her three children, including A.C.  A.C. told Deitric that appellant touched her Apee-pee.@  Deitric then confronted appellant about the
incident, and he denied touching A.C. 
Appellant then asked A.C. if he had touched her inappropriately, and
A.C. said that he had not.  However, on
December 3, 2003, A.C. told Deitric that appellant had touched her
inappropriately and that Ait hurt.@  Deitric then confronted
appellant again and told him that he could either leave the house or sleep in
the living room. Appellant told Deitric that he was not going to sleep on the
couch and called the police.  When Chad
Morgan, an officer with the Fort Worth Police Department, arrived, appellant
was standing in the front yard and told Officer Morgan that he called the
police because Deitric accused him of touching A.C. inappropriately.  Officer Morgan then interviewed Deitric and
A.C., and after learning that the assault had not happened recently, he took down
the information and left without arresting appellant.  Officer Morgan then contacted the crimes
against children unit to investigate the matter.  After A.C. was interviewed and given a
medical examination, the grand jury indicted appellant for aggravated sexual
assault and indecency with a child.

The indictment charged
appellant in count two with aggravated sexual assault of a child under fourteen
by intentionally or knowingly causing A.C.=s sexual organ to contact appellant=s sexual organ, in count three with aggravated sexual assault of a
child under fourteen by intentionally or knowingly inserting his finger into
A.C.=s sexual organ, and in count eight with indecency with a child by
exposing his genitals to A.C.  The jury
found appellant guilty as to all three counts, and the trial court assessed his
punishment at fifty years= confinement
for count two, fifty years= confinement for count three, and twenty years= confinement for count eight. 
Appellant is appealing only his convictions and sentences for counts two
and eight.  

III.  Legal and Factual Sufficiency

In points one through four,
appellant argues that the evidence is legally and factually insufficient to
establish that he committed the offenses of aggravated sexual assault of a
child under fourteen in count two and indecency with a child by exposure in
count eight. 

A.  Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton
v. State, 165 S.W.3d 691, 693 (Tex.
Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex.
Crim. App. 2004).  The only question to
be answered in a factual sufficiency review is whether, considering the
evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id.
at 484.  There are two ways evidence may
be factually insufficient:  (1) when the
evidence supporting the verdict or judgment, considered by itself, is too weak
to support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id.
at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id.
at 485.  In other words, evidence
supporting a guilty finding can outweigh the contrary proof but still be
insufficient to prove the elements of an offense beyond a reasonable
doubt.  Id. 

In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at 481; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id.
at 484, 486-87.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).

B.  Applicable Law

Section 22.021 of the penal
code states that a person commits the offense of aggravated sexual assault Aif the person intentionally or knowingly causes the sexual organ of a
child to contact or penetrate the mouth, anus, or sexual organ of another person,
including the actor.@  Tex.
Penal Code Ann. '
22.021(a)(1)(B)(iii) (Vernon Supp. 2005). 
Section 21.11 provides, 

(a) A
person commits the offense [of indecency with a child], if, with a child
younger than 17 years and not the person=s spouse, whether the child
is of the same or opposite sex, the person:








. . . . 

 

(2)(A)
with intent to arouse or gratify the sexual desire of any person exposes the
person=s
anus or any part of the person=s genitals, knowing the child
is present.

 

Id. ' 21.11 (a)(2)(A) (Vernon 2003). 


C.  Applicable Facts








At trial, Deitric testified
that in April 2003, appellant moved in with her and her three children,
including A.C, who was three years old at the time. Deitric stated that she had
a sexual relationship with appellant after he moved in.  She said that there were two bedrooms in the
house and that she, appellant, and A.C. slept in one bedroom,[2]
and her two sons slept in the other bedroom. 
Deitric testified that in September 2003, A.C. began to be ashamed of
her body and did not want Deitric to see her without her clothes on.  Deitric asked A.C. if anyone had touched her Aprivates,@ and A.C.
said that appellant touched her Aprivate@ with his
hand.  Deitric then called appellant, who
was at work, and asked him if he had touched A.C. inappropriately.  After appellant received the phone call, he
left work, went home, and asked A.C. if he had touched her.  Deitric stated that appellant confronted A.C.
in a loud voice and was intimidating. 
A.C. said that appellant did not touch her inappropriately.  Nonetheless, Deitric moved A.C. out of the
bedroom that she and appellant were in and moved her into the bedroom with A.C.=s brothers.  Deitric told her
oldest son to lock the door at night and put a knife in the door so that no one
could get into the bedroom.

A short time after A.C. moved
into the other bedroom, while Deitric was giving A.C. a bath, A.C. told her
that she was telling the truth about appellant touching her.  A.C. told Deitric that appellant touched her Apee-pee@ and that it
hurt.  When appellant came home that
night, Deitric told appellant that A.C. told her that appellant had touched her
inappropriately and that he could move out of the house or sleep in the living
room.  Appellant told Deitric that he was
going to leave and then called the police. 
Appellant demanded that A.C. get tested to determine if she had been
sexually assaulted.  When the police
arrived, appellant told the police officer that he called the police because
Deitric accused him of sexually assaulting A.C. 
After the police talked with appellant and A.C., they left, without
arresting appellant.

Deitric then testified that
several weeks later, she talked with Detectives Easter and Benjamin about the
allegations.  After talking with the
detectives, Deitric took A.C. to Cook Children=s Medical Center in Fort
 Worth, Texas, for a
medical examination.








Deitric also testified that
A.C. told her that A.C. saw Awarm ice cream come out of [appellant=s] pee pee.@  She further testified that A.C. did not have
any physical injuries.  Deitric stated
that she believed A.C. when A.C. told her that appellant touched her and that Ait hurt@ because Deitric
did not think that A.C. would know that.








A.C. testified that appellant
had touched one of her Aparts.@  She stated that she had her
clothes on and that appellant touched her underneath her clothes.  A.C. said that appellant=s hand went up her leg and that he touched her genitals with his
hands.  A.C. further testified that
appellant touched the Ainside part@ of her Aprivate@ with his finger and that he moved his finger a little bit.  A.C. testified that appellant only touched
her one time.  A.C. stated that she did
not know where she was when appellant touched her but that they were not at
home.  She said that appellant was
wearing pants but that he did not have a shirt on during the assault.  Additionally, A.C. testified that appellant=s pants stayed zipped and that she did not see his penis.  After the assault, A.C. told Deitric, and
Deitric called the police.  A.C. stated
that she never went to a doctor to talk about the assault and that appellant
never confronted her about the assault. 
A.C. stated that she knew that appellant=s penis was brown and hard, that appellant told her that, and that she
did not see appellant=s
penis.  Additionally, A.C. stated that
she did not see anything come out of appellant=s penis, that appellant did not say anything during the assault, and
that she was afraid of appellant.  A.C.
further stated that Deitric was at home watching TV when the assault occurred.

Officer Morgan testified that
on December 3, 2003, he responded to a call at Deitric=s house.  He stated that
appellant was in the front yard when he arrived and that appellant told him
that Deitric called him at work and accused him of inappropriately touching
A.C.  Appellant told Officer Morgan that
he was not going to sleep on the couch because he was the man of the house and
because he wanted A.C. examined by a doctor. 
After another officer arrived, Officer Morgan went inside the house and
spoke with Deitric and A.C.  Officer
Morgan testified that A.C. told him that appellant Atouched me there@ and pointed
to her genitals.  He stated that he did
not take A.C. to the hospital because there would not be any evidence because
A.C. told him that it did not happen recently. 
Additionally, appellant voluntarily left the house while the officers
were still there, however; he was not arrested.








Martha Easter, a detective
with the Fort Worth Police Department in the crimes against children unit,
stated that she was assigned to A.C.=s case on December 4, 2003. 
Detective Easter contacted Deitric and appellant about the assault.  She stated that she talked with Deitric
because she was the first person to whom A.C. made an outcry statement.   Detective Easter stated that after receiving
the report, she arranged for A.C. to be interviewed and to have a sexual
assault examination.  On February 4,
2004, A.C. had the sexual assault examination, even though two months had
passed since appellant called the police. 
Detective Easter stated that A.C. was not able to tell her the exact
date that the assault occurred on but that this was not unusual in child
victims. Additionally, Detective Easter testified that children do not
typically lie about being sexually assaulted. 
On January 9, 2004, appellant gave a written statement to Detective
Easter in which he denied touching A.C. inappropriately. 








Dr. Jamye Coffman, the
medical director of the care team abuse clinic at Cook Children=s Medical Center, testified that she examined A.C. on February 4,
2004, when A.C. was four-years-old.  She
stated that A.C. did not know the specific dates of the sexual assaults.  Dr. Coffman stated that the reason that A.C.
was not examined earlier was because the time frame to collect evidence in
prepubertal children is twenty-four hours and that twenty-four hours had passed
since A.C. was assaulted.  She stated
that Deitric told her that she asked A.C. if anyone had touched her Apee pee@ and that
A.C. told her that appellant did.  Dr.
Coffman further testified that she spoke with A.C. and that A.C. told her that
appellant touched her Ahere@ with his hand and pointed to her genitals.  She stated that A.C. said that appellant
pulled down her pants and his pants and that appellant showed her his
penis.  A.C. told Dr. Coffman that
appellant put his penis into her vagina by pointing to her genitals.  A.C. further stated that appellant put his
penis Away inside@ her bottom
and that it hurt but that she did not think that it bled.  A.C. further stated that appellant=s penis Asquirted@ on her chest, abdomen, and thighs, that it looked like water and ice
cream,[3]
and that it was Awarm.@  A.C. also stated that
appellant licked her face. 

At trial, Dr. Coffman stated
that A.C.=s medical
examination was normal but that A.C. did have some dry skin.  Additionally, she thought that the exam was
consistent with A.C.=s outcry
statement; however, there was no physical evidence of penetration of the vagina
or anus.  However, A.C.=s knowledge on sexual matters was inconsistent with a four-year-old=s normal knowledge.  However,
Dr. Coffman testified that A.C.=s diagnosis was Asexual abuse
with a normal exam,@ but also
said there was not any evidence of abuse. 

D.  Analysis

1.  Count Eight: 
Indecency with a Child by Exposure








In his first and third
points, appellant contends that there is no evidence to demonstrate that he
intentionally or knowingly exposed his penis to A.C. Appellant asserts that the
only evidence submitted at trial concerning this offense was from A.C. who
stated that she knew appellant=s penis was Abrown@ because he told her. 
Additionally, to support his contention, appellant points to A.C.=s statements that she denied seeing appellant=s penis twice during her testimony, that appellant did not touch her
with his penis, that she did not see anything come out of appellant=s penis, and that she did not remember anything about Aice cream.@  However, Deitric testified that A.C. told her
that she saw Awarm ice
cream@ come out of appellant=s Apee pee.@  A.C. further stated that
appellant=s penis Asquirted@; and
indicated that it went on her chest, abdomen, and thighs; and stated that it
looked liked ice cream and was warm. 
Additionally, Dr. Coffman stated that A.C. told her that appellant
pulled down his pants and showed her his penis. 
A.C. further testified that appellant=s penis was Ahard@ and Abrown.@

 We hold that the evidence, when viewed in the
light most favorable to the verdict, supports a determination beyond a
reasonable doubt that appellant intentionally or knowingly exposed his penis to
A.C.; therefore, we overrule appellant=s first point.  Additionally,
when viewed neutrally, the evidence is not so obviously weak or so greatly
outweighed by contrary proof that it would not support the finding of guilty beyond
a reasonable doubt.  We overrule
appellant=s third
point. 








2.  Count Two: 
Aggravated Sexual Assault of a Child

In appellant=s second and fourth points, he complains that the evidence is legally
and factually insufficient to demonstrate that he intentionally or knowingly
caused A.C.=s sexual
organ to contact appellant=s sexual organ. Appellant asserts that the only evidence presented at
trial supporting his conviction for this offense was from Dr. Coffman.

At trial, A.C. testified that
appellant only touched her genitals with his hand and fingers.  At trial, A.C. said that she did not see
appellant=s penis and
that his pants were zipped, but she told Dr. Coffman that appellant took off
her clothes and his clothes. 
Additionally, Deitric testified that A.C. told her that appellant
touched her genitals with his hand only.








However, Dr. Coffman
testified that when she performed a medical examination on A.C.,  A.C. told her that appellant pulled her pants
down and his pants down and that appellant showed A.C. his penis.  A.C. also told Dr. Coffman that appellant put
his penis in her vagina.  Dr. Coffman
further testified that A.C. told her that appellant put his penis Away inside@ her bottom
and that it hurt.  After examining A.C.,
Dr. Coffman testified that there was, however, no physical evidence of
penetration of A.C.=s vagina or
anus.   Appellant did not object to Dr.
Coffman=s testimony regarding A.C.=s statement about the offense.[4]  

In deciding whether the
evidence is sufficient to establish that appellant sexually assaulted A.C. by
contact, the trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given to their testimony.  Poindexter v. State, 153 S.W.3d 402,
406 (Tex.
Crim. App. 2005).  Once the trier of fact
has weighed the probative value of unobjected-to hearsay evidence in its fact
finding process, an appellate court cannot deny that evidence=s probative value or ignore it in its review of the sufficiency of the
evidence.  Id.  Here, appellant failed to object to Dr.
Coffman=s testimony about A.C.=s statement regarding the offense. 
Therefore, the jury was entitled to weigh the testimony in its fact
finding process. Id.  








We hold that the evidence, when
viewed in the light most favorable to the verdict, supports the jury=s verdict that appellant intentionally or knowingly caused A.C.=s sexual organ to contact appellant=s sexual organ.  Thus, we
overrule appellant=s second
point.  Further, when viewed neutrally,
the evidence is not so obviously weak or so greatly outweighed by contrary
proof that it would not support the finding of guilty beyond a reasonable
doubt.  We overrule appellant=s fourth point. 

IV.  Medical Testimony

In his fifth point, appellant
contends that the trial court erred by admitting Dr. Coffman=s testimony that commented on A.C.=s credibility.  Specifically,
appellant contends that Dr. Coffman=s diagnosisCthat Athere was sexual abuse with a normal exam@Cis the only evidence that the jury could have relied on to convict
appellant of counts two and eight and that all this testimony amounts to is a
comment on A.C.=s
credibility and is therefore inadmissible.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  








Here, appellant objected to
Dr. Coffman=s testimony
on the basis of hearsay and improper medical history only.  Appellant failed to object to the testimony
as a comment on A.C.=s
credibility or bolstering the witness. 
The complaint on appeal must comport with the complaint made in the
trial court or the error is forfeited.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Bell v.
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522
U.S. 827 (1997); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App.
1990).  We determine that appellant did
not object on the basis of a comment on A.C.=s credibility or bolstering the witness and that his complaint at
trial does not comport with his complaint on appeal.  See Tex.
R. App. P. 33.1(a)(1). Thus, we overrule appellant=s fifth point.

V.  Conclusion

Having overruled appellant=s five points, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
April 27, 2006











[1]See Tex. R. App. P. 47.4.





[2]Deitric
stated that A.C. slept on a pallet by the bed in the bedroom.  





[3]Dr. Coffman
said that A.C.=s
statement that Aice
cream@
squirted from appellant=s
penis is consistent with ejaculation.





[4]Appellant
did object once to Dr. Coffman=s testimony about what Deitric
told her about the offense as hearsay and once to assuming facts not in
evidence.