Affirmed and Memorandum Opinion filed November 16, 2006








Affirmed and Memorandum Opinion filed November 16, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00452-CR

____________

 

HECTOR GONZALES RODRIGUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court

Harris County, Texas

Trial Court Cause No. 1020381

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Hector Gonzales Rodriguez, was convicted of
engaging in organized criminal activity by a jury and sentenced to 29 years= confinement in
the Texas Department of Justice, Institutional Division.  In his appeal,
appellant raises three points of error, namely, the trial court erred (1) in
admitting evidence over his hearsay objection, (2) in admitting evidence of the
circumstances surrounding his custodial oral statement, and (3) in overruling
his objection to improper jury argument regarding evidence outside the record. 
We affirm.








                                                  Background

Appellant was allegedly involved in a scheme to switch
vehicle identification numbers (AVINs@).  Sergeant David
Kucifer of the Texas Department of Public Safety testified that a VIN (a number
17 digits in length) identifies the year, the model, and the manufacturer of
the vehicle.  No two VINs are identical.  In this scheme, the perpetrators[1]
took the VIN plates off salvage vehicles and placed them on stolen vehicles
after removing the correct VIN from the stolen vehicles.  To remove the VIN
plate, it may be necessary to remove the windshield or the dashboard.  The
perpetrators also removed other visibly displayed VINs.  Law enforcement
officers, however, can verify the true VIN of a vehicle by examining
confidential locations known only to the manufacturer and law enforcement where
the true VIN is surreptitiously recorded.  

Kucifer began investigating this scheme in June 2002.  He
investigated a salvage vehicle whose VIN plate was missing.  Kucifer, however,
was able to identify the vehicle=s VIN by
confidential means.  Kucifer=s investigation led him to Sunny=s Flea Market in
Houston.  He learned that a number of altered stolen vehicles that were
recovered by law enforcement had been sold at the flea market.  During the
investigation, Kucifer found the same names came up several different times as
being prior owners of the salvage vehicles, whose VIN numbers were found on the
stolen altered vehicles.  Over 40 salvage vehicles were located at a junkyard
in Wallis, Texas, run by Charles Spates.  








On June 8, 2003, Kucifer conducted a surveillance on
Ruellen Street for two suspectsCEzequil Pone and Jose NietoCfor whom arrest
warrants had been obtained.  Kucifer observed appellant pull up in front of
Ponce=s house in a Ford
pickup truck, exit the vehicle, visit Ponce, and leave.  Kucifer followed
appellant and noted the license plate of the truck appellant was driving. 
Kucifer thought appellant knew he was being followed and Ajust basically let
him go.@  Kucifer next saw
appellant on June 11, 2003, driving the same truck.  The truck appellant was
driving was a stolen vehicle with an altered VIN that was subsequently
recovered in Wichita, Kansas.  

Charles Spates, the owner of the salvage yard where a
number of the salvage vehicles were found, testified that appellant stored 35
or 40 Ford trucks at his yard and left them there.  All the trucks brought to
Spates= yard had the VIN
plates cut out of them.  Filimino Adame, who cleaned the vehicles that were
sold at the flea market, testified that he saw appellant changing the numbers
located between the windshield and the dashboard on vehicles at a house on
Heatherbrook approximately 10 or more times.  Todd McCrohan, a crime scene
investigator and latent print examiner for the Fort Bend County Sheriff=s Department,  was
able to  match appellant=s fingerprint to a print found on a VIN
plate.  The investigation lasted two years and, ultimately, 137 vehicles were
recovered.

                                                       Hearsay

In his first point of error, appellant claims the trial
court erred in admitting evidence over his hearsay objection.  The trial court=s ruling on the
admission of evidence is subject to an abuse of discretion standard.  McDonald
v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  The trial court
abuses its discretion when its decision is so clearly wrong as to lie outside
that zone within which reasonable persons might disagree.  Id.  

Hearsay is Aa statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.@  Tex. R. Evid. 801(d); Shuffield v.
State, 189 S.W.3d 782, 790 (Tex. Crim. App. 2006).  








During the punishment phase of the trial, Kucifer testified
that he came into contact with appellant in 1997, during the investigation of a
1990 Chevrolet pickup truck that had been stolen and the VIN had been changed. 
Kucifer set up surveillance at the automotive repair facility where the truck
was located to wait for someone to move it.  Appellant showed up and drove away
in the truck.  Kucifer followed appellant for a distance and then stopped him. 
When Kucifer arrested appellant, he found some business cards in appellant=s wallet.  Kucifer
testified that the card that Astick [sic] out in my mind was one from
Spates, Spates Used Auto Parts.  And then he had other cards that had
information on the back of them that we felt was interesting.@  

When the prosecutor asked Kucifer what information was
handwritten on the back of the cards, appellant objected on the basis of
hearsay.  The trial court overruled appellant=s objection on the
basis that it was an adoptive admission.  Kucifer then testified that names and
phone numbers were written on the back of the business cards.  One in
particular stood outC AManuel Renteria,
with the phone number and pager, name of Flacko and a phone number, what looked
like the word >salvage,= . . . and license
plate.@  

We find Kucifer=s testimony was
not offered for the purpose of proving that those phone numbers were Renteria=s or Flacko=s.  Instead,
Kucifer=s testimony was
offered only to show that appellant had a business card containing this
information in his possession and, therefore, was not hearsay.[2] 
It also showed the link between appellant and Renteria.[3] 
The trial court did not abuse its discretion in admitting Kucifer=s testimony
regarding what was written on the back of the business card.  Appellant=s first issue is
overruled.

                                     Custodial Oral Statement

In his second
point of error, appellant asserts the trial court erred in admitting evidence
of the circumstances surrounding his custodial oral statement.  Under Article
38.22 of the Texas Code of Criminal Procedure:








No oral or sign language statement of an accused made as a result of
custodial interrogation shall be admissible against the accused in a criminal
proceeding unless:

(1) an electronic
recording, which may include motion picture, video tape, or other visual
recording, is made of the statement.

Tex. Code Crim. Proc. Ann. art. 38.22, ' 3(a)(1) (Vernon
2005).  

During the punishment phase of the trial, Kucifer testified
about appellant=s arrest in the 1997 theft case.  The
prosecutor asked Kucifer about what happened when he took appellant to the
police station.  Kucifer testified that appellant was read his constitutional
rights (the right to remain silent, not to make a statement, to have an
attorney present if he wishes to give a statement, to cease talking to the
police or commence talking to the police at any time, and that anything that he
says can be used against him in court), and someone was present to communicate
those rights in Spanish to appellant.  When the prosecutor asked if appellant
understood those rights, appellant=s counsel objected
as requiring a speculative response; the trial court sustained the objection.  

Kucifer stated
appellant waived his rights at that time.  At this point, appellant=s counsel objected
on ground that the question called for speculation; the trial court overruled
the objection.  After appellant waived his rights, he agreed to talk to
Kucifer.  When the prosecutor asked Kucifer if appellant had been coerced or
threatened, appellant=s counsel objected to the question as
leading; the trial court overruled the objection.  Kucifer then testified that
he did not promise appellant directly or indirectly anything in exchange for
appellant talking to him, and he did not deny appellant food or restroom
breaks.  When the prosecutor asked Kucifer Awhat was the
procedure you followed when you began talking with [appellant],@ appellant=s counsel asked to
approach the bench where the following took place:

MR. CASTRO:  Your Honor, may we approach?

                                                    (At
the Bench)

MR. CASTRO:  Your Honor, are we fixing to have a
Jackson Denno hearing or what?








MS. GRAUL:  I don=t plan on admitting the statement.  I just wanted to make
sure -- 

THE COURT:  You don=t plan on what?

MS. GRAUL:  Admitting his statement that -- 

THE COURT:  You don=t plan on what?

MS. GRAUL:  Admitting his confession.  I don=t.

THE COURT:  Then why are we having all this?

MS. GRAUL:  To make sure that there is nothing wrong
with the fact that when he made statements -- I=m going to ask Sergeant Kucifer if he learned
anything from the defendant.

THE COURT:  I=m sorry?

MS. GRAUL:  I=m going to ask -- elicit testimony from Sergeant Kucifer
about what the defendant told him and what he learned from the defendant.  So,
I was just trying to lay down -- 

THE COURT:  Was he in custody, Kelly?

MS. GRAUL:  Yes.

THE COURT:  Oral statements made in custody are not
admissible.  Are you seeking to introduce the written statement?

MS. GRAUL:  We weren=t; but I guess we can now, Judge.

MR. CASTRO:  It=s going to take a lot longer now.  I was not aware that
that was going to happen.

MS. GRAUL:  No.  That you were going to introduce --


THE COURT:  Can I
ask you -- off the record.

After an
off-the-record discussion, the trial court stated appellant=s oral statement
made in custody was not admissible and the State was withdrawing the request to
introduce the written statement.  Appellant=s counsel then
made the following objection:

MR. CASTRO:  My objection, Judge, was based on the
fact that what Sergeant Kucifer testified just a moment before we approached
the bench; and I have asked the Court to instruct the jury to disregard any
portion of that testimony with regards to the statement that was made by my
client.








THE COURT:  Thank you.  That=s denied.  Okay. 
We=re ready for the
jury.

On appeal, appellant argues that because the oral
statements made by Kucifer were inadmissible, the circumstances surrounding the
taking of the statements are not relevant under Rule 401 of Texas Rules of
Evidence.[4] 
To preserve error in the admission of evidence, the defendant must make a
timely and specific objection.  Martinez v. State, 22 S.W.3d 504, 507
(Tex. Crim. App. 2000).  An objection is timely if it is Amade as soon as
the ground for complaint is apparent or should be apparent.@  Aguilar v.
State, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000) (emphasis in original). 
To be considered timely, a specific objection to inadmissible evidence must be
urged at the first opportunity.  Id. at 905B06.  Also, the
legal basis for the complaint cannot vary from that raised at trial.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  

By waiting until after the testimony had come in, appellant=s objection to
Kucifer=s testimony
regarding the circumstances surrounding his oral statement was not timely. 
Appellant=s counsel lodged three objectionsCtwo for
speculation and one for leading.  It was apparent an objection was necessary
when the prosecutor started this line of questioning. Finally, counsel=s complaint on
appeal does not comport with the objection at trial.  Therefore, appellant has
waived this complaint on appeal.  Appellant=s second point of
error is overruled.

                                                Jury Argument








In his third point of error, appellant contends the trial
court erred in overruling his objection to improper jury argument regarding
evidence outside the record.  There are four permissible areas of jury
argument: (1) summation of the evidence presented at trial, (2) reasonable
deduction drawn from the evidence, (3) answer to opposing counsel=s argument, or (4)
a plea for law enforcement.  Jackson v. State, 17 S.W.3d 664, 673 (Tex.
Crim. App. 2000).  The State is allowed wide latitude in drawing inferences
from the evidence so as long as the inferences drawn are reasonable and offered
in good faith.  Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App.
1997).  However, the State may not use the jury argument to bring before the
jury, either directly or indirectly, evidence which is outside the record.  Borjan
v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).  The effect is to
request the jury to determine the punishment of the accused based on collateral
matters which were interjected by way of the jury argument.  Id.  

Appellant
complains of the following jury argument by the State:

MS. GRAUL:  . . . So besides the case-in-chief, you
also have to look at what we do know Hectro Rodriguez.  And as I pointed out
earlier, he has done this before.  In fact, in1997, nearly five years before
this auto theft ring investigation occurred, he was already VIN switching on
vehicles, trucks, just like he was in 2002.  He didn=t learn his lesson then.[5]

MR. CASTRO:  Your Honor, I object. 
Misrepresentation of the testimony.  There was no evidence stating that he
switched the VIN in 1997.  They said they had been there, but there was no
testimony linking my client to that.

THE COURT:  Thank you.  Overruled.  She may make
that argument.  

MS. GRAUL: Ladies and gentlemen, use your common
sense.  We know what Mr. Rodriguez did back in 1997.  Sergeant Kucifer came in
here and told you what kind of vehicle he was in.  He also told you he found a
wallet with not only Charles Spates card in it but a card with Manuel Renteria=s name handwritten and a phone
number, also the word Asalvage@ with a license plate written by
it.

We know what he
was doing back in 1997.  We gave him a second chance; and he is doing it again,
bigger, better, and smarter. . . .








Appellant complains that the prosecutor=s argument that he
was involved in VIN switching in the past and he did not learn his lesson
improperly called for the jury to speculate on possible extraneous offenses. 
Appellant argues that although Kucifer testified that he was arrested in 1997,
while he was driving a stolen vehicle with a switched VIN, there was no
evidence he was involved in the switching of any VIN or participated in an auto
theft ring as implied by the State.  The State argues the prosecutor=s argument was a
reasonable deduction from the evidence and plea for law enforcement.  

During the guilt-innocence phase of the trial, Charles
Spates, the owner of Spates Used Auto Parts, testified that appellant stored nearly
40 vehicles on his property that were missing VINs and were confirmed to have
been used in the VIN switching scheme.  Moreover, during the punishment phase
of the trial, Kucifer testified that he arrested appellant in 1997, during the
investigation of a 1990 Chevrolet pickup truck that had been stolen and the VIN
had been changed.  Kucifer set up surveillance at the automotive repair
facility where the truck was located to wait for someone to move it.  Appellant
showed up and drove away in the truck.  After following appellant, Kucifer
stopped and arrested him.  Kucifer found a business card on appellant from
Spate=s Used Auto Parts
which had the name of appellant=s co-defendant at trial, AManuel Renteria,@ written on the
back of it with a phone number, pager number, the word Asalvage,@ and a license
plate number.  Therefore, the prosecutor=s argument that
appellant had been involved with VIN switching in the past was reasonable
deduction from the evidence.  

The State argues it was also a plea for law enforcement by
emphasizing that appellant had been convicted of a similar theft offense on a
much smaller scale, but had graduated to the same type of scheme on a much
larger scale and needed to be punished accordingly to learn a lesson.  We agree. 









Even if the State=s argument were
improper, we find such argument harmless.  Improper jury argument is reviewed
under a nonconstitutional harm analysis under Rule 44.2(b) of the Texas Rules
of Appellate Procedure.  Tex. R. App.
P. 44.2(b); Threadgill v. State, 146 S.W.3d 654, 666 (Tex. Crim. App.
2004).  Under Rule 44.2(b), the reviewing court disregards the error if it does
not affect the defendant=s substantial rights.  Tex. R. App. P. 44.2(b).  A substantial
right is affected when the improper jury argument has a substantial and
injurious effect or influence on the jury=s verdict.  Rich
v. State, 160 S.W.3d 575, 578 (Tex. Crim. App. 2005).  We balance the
following three factors when determining whether the State=s improper
argument affects the defendant=s substantial rights: (1) the severity of
the misconduct (prejudicial effect), (2) curative measures, and (3) the
likelihood of the same punishment being assessed.  Hawkins v. State, 135
S.W.3d 72, 77 (Tex. Crim. App. 2004).

With respect to the first factor, the prejudicial effect
was minimal.  The complained of argument was only a small portion of the State=s overall closing
argument, which emphasized appellant=s other
convictions for burglary of a motor vehicle, driving while intoxicated, theft,
and illegal re-entry into the United States; the 137 individuals whose vehicles
were stolen; the innocent purchasers who thought they owned vehicles after paying
for them; and the substantial amount of financial damage suffered by the
victims.  With respect to the second factor, no curative action was taken. 
With respect to the third factor, given appellant=s prior convictions
for burglary of a vehicle, driving while intoxicated, theft, and illegal
re-entry, the complained of argument had little or no effect on the 29-year
sentence assessed by the jury.  We conclude the error, if any, did not affect
appellant=s substantial rights.  Appellant=s third point of
error is overruled.  

Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed November 16, 2006.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The other persons involved were Manuel Renteria,
Pius Opondo, Francisco Barrera, Ezequil Ponce, Juan Aragon, Jose Adame, Angel
Adame, and Jose Nieto.  Appellant was tried with co-defendant Manuel Renteria. 






[2]  See $455.00 in U.S. Currency v. State, 856
S.W.2d 852, 853 (Tex. App.CFort Worth
1993, no pet.) (holding note pad found in vehicle was not admitted to establish
the truth of the Adope notes@
contained within the pad, but to show the vehicle contained the pad with the Adope notes@).





[3]  See Guidry v. State, 9 S.W.3d 133, 152 (Tex.
Crim. App. 1999) (holding police officer=s
testimony that the name and phone of co-conspirator=s girl friend were listed in address book of the
principal who had hired defendant and co-conspirator to murder the principal=s wife was not offered to prove the number was the
girlfriend=s, but was admissible as circumstantial evidence of
the link between the girlfriend, co-conspirator, and principal)





[4]  Tex. R. Evid.
401.  





[5]  Emphasis added.