COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-386-CR

 

 

RANDALL KEITH JOLLY                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








A jury convicted Appellant
Randall Keith Jolly of assault bodily injury to a family member, and the trial
court sentenced him to 120 days= confinement in jail.  In six
issues, Jolly argues that the trial court abused its discretion by
unconstitutionally restricting his cross-examination and attempted impeachment
of the complainant and erred by requiring him to attend counseling as part of
his sentence.  We will affirm.

Jolly, his daughter Mindy,
and Mindy=s infant
child attended a birthday party at a relative=s residence on December 15, 2005. 
Mindy had given Jolly a ride to the party, but she left without him to
return to Jolly=s house
sometime around 10:00 p.m.  Jolly
returned to his house about an hour later, angry that Mindy had left the party
without him.  Jolly confronted Mindy
about leaving him, and they became involved in a physical confrontation, falling
to the floor a number of times during the struggle.  While on the floor, Jolly put his arms around
Mindy=s torso, and Mindy swung her arms and head back in an effort to break
free.  Her head contacted Jolly=s lip, cutting it open.  Jolly
grabbed Mindy=s arm,
flipped her over, grabbed her hair, and hit her head on the floor. At some
point during the struggle, Jolly grabbed a zip tie and unsuccessfully attempted
to place it over her.  Mindy was able to
get away, retrieve her child, and leave the house.  Extremely upset, crying, and with a
substantial amount of blood on her shoulders, she flagged down a nearby police
officer along the road and informed him that she had been assaulted.  Shortly thereafter, the same police officer
responded to a 911 call made by Jolly and arrested him. Mindy suffered a
dislocated shoulder, a sprained wrist, and contusions.








Mindy, Jolly, and the
responding police officers testified at trial about the events that occurred on
December 15, 2005.  Two defense witnesses
testified about Mindy=s character
for violence and for truthfulness, opining that she was a violent and
untruthful person.  During the trial, the
trial court sustained a number of objections lodged by the State, which Jolly
now complains of in part on appeal.  In
addition to 120 days in jail, the trial court ordered Jolly to attend Ain-custody BIP@ as part of
his sentence.  The written judgment does
not contain the Ain-custody
BIP@ portion of Jolly=s sentence.

Jolly argues in his first
five issues that the trial court abused its discretion by sustaining the State=s objections to multiple questions posed by Jolly=s attorney.  He contends that
the trial court=s limitation
of his cross-examination had the effect of denying him his right of
confrontation as guaranteed by the Sixth Amendment to the United States
Constitution.  See U.S. Const amend. VI.  Jolly argues that his Afirst five issues demonstrate unconstitutional limitations placed by
the trial court on [his] right to confront and cross-examine the only material
witness in this case.  These five related
issues had the cumulative effect of restricting the information [that he] was
able to show the jury about the complaining witness=[s] credibility and her bias and motive to testify against [him].@








An appellate court reviews a
trial court=s exclusion
of evidence for an abuse of discretion.  Green
v. State, 934 S.W.2d 92, 101B02 (Tex. Crim. App. 1996).  A
trial court abuses its discretion when it acts without reference to any guiding
rules and principles or acts arbitrarily or unreasonably.  Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990).

The Sixth Amendment right to
confrontation necessarily includes the right to cross-examine.  Carroll v. State, 916 S.W.2d 494, 497
(Tex. Crim. App. 1996).  This
constitutional right is violated when appropriate cross-examination is
limited.  Id.  However, constitutional error may be
forfeited by failure to raise the issue at trial.  Briggs v. State, 789 S.W.2d 918, 924
(Tex. Crim. App. 1990); see also Holland v. State, 802 S.W.2d 696, 700
(Tex. Crim. App. 1991) (reasoning that a defendant forfeits his constitutional
right to confront witnesses if he does not object to the denial of that right
at trial).








An appellate issue involving
a proffer of evidence rather than an objection must still satisfy the
preservation of error requirements.  Reyna
v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that the
purpose of requiring an objection is to give to the trial court or the opposing
party the opportunity to correct the error or remove the basis for the
objection and reasoning that A[a]though this case involves a proffer of evidence rather than an
objection, the same rationale applies.@).  To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  If the proponent of the evidence does not
clearly articulate to the trial court that the Confrontation Clause requires
the admission of the challenged evidence, he fails to do everything necessary
to bring to the trial court=s attention the evidentiary rule or statute in question and its
precise and proper application to the evidence in question, and error is not
preserved in such a case.  Reyna
168 S.W.3d at 179.  Thus, it is not
enough to merely attempt to introduce evidence or to tell the judge that the
evidence is admissible.  Id.  Rather, the proponent, if he is the losing
party on appeal, must have told the trial court why the evidence was admissible.  Id.; Nelson v. State, No.
14-06-00684-CR, 2007 WL 2790367, at *3 (Tex. App.CHouston [14th Dist.] Sept. 27, 2007, pet ref=d) (mem op.) (not designated for publication).  The complaint on appeal must comport with the
complaint raised at trial.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).








In his first issue, Jolly
argues that the trial court abused its discretion and denied him his right of
confrontation under the Sixth Amendment when it prohibited him from
cross-examining Mindy regarding the effects of a criminal conviction on her
living situation.  The following exchange
occurred:

[Defense
counsel]:  Mindy, would you be able to
continue to stay in that program if you picked up a criminal conviction?

 

[Prosecutor]:  Objection,
relevance.  She=s not
on trial for - -

 

The Court:  I=m
going to sustain that objection.

 

[Defense
counsel]:  Mindy, going back to the first
physical contact of that night at the house, who was the first person to touch
who?  And I don=t
mean push, shove, but who made the first physical contact?

 

In his second issue, Jolly
argues that the trial court abused its discretion and denied him his right of
confrontation under the Sixth Amendment when it prohibited him from
cross-examining Mindy regarding her testimony on direct examination about his
culpable mental state.  The following
exchange occurred:

[Defense
counsel]:  When you say that your dad put
this zip tie over you, you can=t say - - is it true that you
said you don=t
know what his intentions were?

 

[Mindy]:  I can=t state his intentions.

 

[Defense
counsel]:  So you don=t
feel that he was doing it to choke you?

 

[Prosecutor]:  Objection. 
She stated she doesn=t know what his intentions
were.

 

The
Court:  I=ll
sustain.  I think she=s
answered that question.

 








Now,
if you=re at
a point where you can=t go
any further, tell me, and we=ll take a break.

 

[Defense
counsel]:  I=m not
- - just a moment, Judge.

 

Oh, Mindy, when you commented
that your dad made a statement last time you were at court, - -

In his third issue, Jolly
argues that the trial court abused its discretion and denied him his right of
confrontation under the Sixth Amendment when it denied him the opportunity to
impeach Mindy with an admission against interest.  Jolly sought to impeach Mindy by questioning
a third party about the circumstances surrounding her assault of a roommate because
the State had elicited testimony about Mindy=s conviction for the assault, including the justifications for Mindy=s conduct in that case.  The
following exchange occurred outside the presence of the jury:

[Defense
counsel]:  But as far as that goes, but
what about the occasion where she came and she - - Mindy=s
testified that the reason she assaulted Brittany was because she grabbed her by
the arms.  She admitted - -

 

The
Court:  No.  We=re not getting into any
specifics of any other incidences.

 

[Defense
counsel]:  But in this case, Judge, it=s
specifically impeachment.  She said one
thing.  There=s a
witness that tells you there=s an admission against
interest, the opposite.

 

The
Court:  No.  I=m not going to get into
that.  She pled no contest to it in a
criminal court.  So that should matter
more than anything else at this point in time.








[Defense
Counsel]:  But she testified.

 

The
Court:  No, I=ve
ruled.

 

[Defense Counsel]:  Okay.

In his fourth issue, Jolly
argues that the trial court abused its discretion and denied him his right of
confrontation under the Sixth Amendment when it prohibited him from questioning
Mindy about her propensity for violence or past violent behavior.  The following exchange occurred:

[Defense
counsel]:  Ever behave like that before,
Mindy?

 

[Prosecutor]:  Objection, relevance.

 

The Court:  Sustained.

In his fifth issue, Jolly
argues that the trial court abused its discretion and denied him his right of
confrontation under the Sixth Amendment when it prohibited him from questioning
Mindy about prior assault allegations against her.  The following exchange occurred:

[Defense counsel]:  Mindy, have you ever assaulted anyone before?

[Prosecutor]:  Objection, relevance.

The Court:  Sustained.

[Defense counsel]:  Judge, it goes to character.  It goes to pattern. 








In each instance above, Jolly
never argued that the Confrontation Clause demanded admission of the evidence
that he sought to introduce. 
Consequently, the trial court never had the opportunity to rule upon
this rationale.  Because Jolly failed to
raise at trial the Confrontation Clause argument that he now asserts on appeal,
he did not preserve this issue for appellate review.  See Reyna, 168 S.W.3d at 179.  We overrule Jolly=s first, second, fourth, and fifth issues.  As to Jolly=s third issue, to the extent Jolly argues that he was denied his right
of confrontation, we overrule his third issue.








In his third issue, Jolly
argues that the trial court abused its discretion when it prohibited Jolly from
asking a defense witness if Mindy told her that she had assaulted the
complainant in Mindy=s assault
case because the complainant had told Mindy that she was an unfit parent and
not because the complainant had grabbed Mindy=s daughter by the arm.  The
general rule is that a party is not entitled to impeach a witness on a
collateral matter.  Ramirez v. State,
802 S.W.2d 674, 675 (Tex. Crim. App. 1990). 
However, when a witness leaves a false impression concerning a matter
relating to his or her credibility, the opposing party may attempt to correct
that false impression on cross-examination.  Id. at 676.  A[T]he opponent must correct the >false impression= through
cross-examination of the witness who left the false impression, not by
calling other witnesses to correct that false impression.@  Wheeler v. State, 67
S.W.3d 879, 885 (Tex. Crim. App. 2002). 
To the extent that Jolly does not raise a right of confrontation
argument in this issue, the trial court did not abuse its discretion by
prohibiting Jolly from attempting to correct the alleged false impression that
Mindy left about the circumstances surrounding her assault case by questioning
a third party about the false impression in an attempt to correct it.  Accordingly, we overrule the remainder of
Jolly=s third issue.

In his sixth issue, Jolly
argues that the trial court erred when it made an oral pronouncement of
sentence requiring him to attend Ain-custody BIP@ (a
batterers=
intervention program) while he served his sentence because attending counseling
is not a form of punishment included for the offense of assault bodily
injury.  He asks us to strike the
counseling requirement, but he also prays that we reverse his conviction and
sentence.

Section 12.01 of the penal
code provides that A[a] person
adjudged guilty of an offense under this code shall be punished in accordance
with this chapter and the Code of Criminal Procedure.@  Tex. Penal Code Ann. ' 12.01 (Vernon 2003).  With
certain exceptions inapplicable here, the offense of assault bodily injury is a
class A misdemeanor.  See id. ' 22.01(a)(1), (b).  A class A
misdemeanor carries with it a fine not to exceed $4,000, confinement in jail
for a term not to exceed one year, or both a fine and confinement.  Id. ' 12.21.








The requirement that Jolly
attend Ain-custody BIP@ during his
120-day sentence is thus not authorized by law, which the State has essentially
conceded.  See id.  A sentence not authorized by law is
unenforceable.  See Mizell v. State,
119 S.W.3d 804, 806 (Tex. Crim. App. 2003). 


Although the trial court made
an oral pronouncement requiring Jolly to attend Ain-custody BIP,@ the written
judgment does not contain this portion of the sentence.  Generally, an oral pronouncement of a
sentence will control over the written judgment, and the solution when there is
a conflict is to modify the written judgment to conform to the sentence that
was orally pronounced.  Thompson v.
State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); Coffey v. State,
979 S.W.2d 326, 328 (Tex. Crim. App. 1998). 
But nothing in Coffey suggests that if the oral pronouncement of
a sentence is legally unenforceable, as in the present case, the unenforceable
oral pronouncement nonetheless prevails over an enforceable written sentence as
set forth in the judgment.  Ribelin v.
State, 1 S.W.3d 882, 885 n.2 (Tex. App.CFort Worth 1999, pet. ref=d).  The sentence that a
defendant serves is based on information contained in the written
judgment.  Tex. Code Crim. Proc. Ann. art. 42.01, ' 1 (Vernon 2006).








Here, the written judgment is
enforceable because it falls within the statutory range of punishment for a
class A misdemeanor.  There is nothing to
suggest that the legally unenforceable oral pronouncement of sentence controls
over Jolly=s written
sentence.  The State has not argued as
much, and we have found no authority supporting that conclusion after
conducting our own research. 
Consequently, because (1) the oral pronouncement requiring Jolly to attend
Ain-custody BIP@ is
unenforceable, (2) the written judgment is enforceable, and (3) we have found
no authority showing that the legally unenforceable oral pronouncement of sentence
controls over the written judgment, to the extent Jolly argues that his
sentence is void, we can only hold that the trial court=s error in orally pronouncing sentence did not affect Jolly=s substantial rights.  See Tex. R. App. P. 44.2(b); Tex. Code Crim. Proc. Ann. art. 42.01, ' 1; Tucker v. State, No. 05-02-00616-CR, 05-02-00617-CR,
2003 WL 42438, at *3 (Tex. App.CDallas Jan. 7, 2003, pet ref=d) (not designated for publication) (holding that trial court=s error in orally pronouncing sentence outside of punishment range did
not affect appellant=s
substantial rights because sentence imposed by written judgment was within
statutory range of punishment).[2]  We overrule Jolly=s sixth issue.








Having overruled all of Jolly=s issues, we affirm the trial court=s judgment.                                           

PER CURIAM

PANEL F: 
HOLMAN, WALKER, and MCCOY, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: 
June 19, 2008











[1]See Tex. R.
App. P. 47.4.





[2]Like the appellant in Tufele v.
State, Jolly requests that we strike the oral pronouncement of sentence
requiring him to attend counseling.  130
S.W.3d 267 (Tex. App.CHouston [14th Dist.] 2004, no
pet.).  In that case, during its oral
pronouncement of sentence, the trial court ordered Tufele to display two
photographs of the Avictim@ in his cell for at least the first
two years of incarceration.  Id.
at 272.  The trial court=s written judgment did not contain
this portion of the sentence.  Id.
at 274.  The court of appeals struck that
portion of his sentence because they had no way of knowing whether appellant,
who was serving his sentence, had been required to display the two
photographs.  Id.  Here, Jolly is free on bond pending
appeal.  Because the sentence that Jolly
will serve is based on information in the written judgment, see article
42.01, ' 1, code of criminal
procedure, and the written judgment does not mention in-custody BIP, we decline
to Astrike@ the offending language, AYou also will do in-custody BIP
while you=re in jail,@ from the reporter=s record.